(No. 32675.-

GILBERT KITT *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed May 20, 1953.*

MOSES LEVITAN, and THEODORE J. LEVITAN, both of Chicago, for appellants.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and HARRY H. POLLACK, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from the circuit court of Cook County seeking a construction of section 193-26 of the Municipal Code of Chicago involving the licensing of certain games of amusement. The arguments concern the constitutionality of the ordinance as well as its application to the matter in question.

The plaintiffs-appellants, hereinafter designated as plaintiffs, are the distributors for the types of coin games involved in this suit. They filed seven separate suits against the defendant city, each suit covering a separate game or games, asking for a writ of *mandamus* to require the proper officials of the defendant to issue licenses for the operation

of the machines. Subsequent amendments were filed asking for a declaratory judgment that the machines in question do not fall within the purview of the ordinance.

The enabling act, section 23-56 of the Revised Cities and Villages Act, provides that the corporate authorities of a municipality shall have power "To license, tax, regulate, or prohibit pin, ball, or bowling alleys, billiard, bagatelle, pigeon-hole, pool, or any other tables or implements kept for a similar purpose in any place of public resort." Ill. Rev. Stat. 1951, chap. 24, par. 23-56.

Acting under this authority, the city of Chicago adopted an ordinance (Municipal Code of Chicago, sec. 193-26,) which, as amended, now reads: "Bagatelle and pigeonhole. It shall be unlawful for any person to keep or use in any place of public resort within the City any tables or implements for any game of bagatelle or pigeonhole. The term 'bagatelle or pigeonhole' as used in this section shall mean a game played with any number of balls or spheres upon a table or board having holes, pockets or cups into which such balls or spheres may drop or become lodged and having arches, pins and springs, or any of them, to control, deflect, or impede the direction or speed of the balls or spheres put in motion by the player, and shall include the modern variety of bagatelle or pigeonhole commonly known as pin games."

The dictionaries define "bagatelle and pigeonhole" as games similar to pool or billiards and played on a table with a cue.

The plaintiffs make several attacks on the constitutionality of the ordinance in question, claiming that it is an attempt by the city to extend and enlarge the powers granted by the enabling act in that the ordinance has been amended to include pinball games; that it enlarges the meaning of the term "place of public resort;" and that the enabling act does not authorize the city to pass an ordi-

nance restricting the mere keeping of a game without a license.

The answer of the defendants alleged that the machines were within the prohibition of the ordinance and that the plaintiffs were not entitled to a declaratory judgment. At the conclusion of the plaintiffs' case the defendant moved for a finding for defendant, which motion was granted. The order determined that a declaratory judgment is not a proper remedy, that plaintiffs' games are pin games or modern variations of bagatelle and pigeonhole, and that the ordinance is applicable to the plaintiffs' machines.

We have read with care the arguments of the parties on the point of the constitutionality of the ordinance and come to the conclusion that the city did not exceed its authority in amending the ordinance to include pinball games or extending its right to regulate devices of like nature. In *People ex rel. Fyfe* v. *Barnett,* 319 Ill. 403, we said: "The true rule is that statutes are to be construed as they were intended to be understood when they were passed. * * * The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted."

It is obvious that the legislature in enacting a statute cannot foresee in physical detail all of the items and things to be controlled under the general purpose motivating the statute. Modern science moves too rapidly to make this possible. The legislature must, in every instance, take things as it finds them and extend the general purpose concerning those things into the future by the use of general language. Here the legislature gave the power to municipalities to regulate certain games in existence at the time the statute was adopted. These games were table games to be found in places of general public resort. The games in existence in these places have passed with time and, taking their place, new games and devices have come into existence. Some of these, it seeems to us, in this

advanced day of development, are "tables or implements kept for a similar purpose."

It was not required that the city exercise all the license powers granted it by the enabling act. The ordinance includes certain specific games which the city had the power to regulate under the enabling act. It was not required to adopt all. *People* v. *Callicott, 322* Ill. 390.

The large question before this court is whether or not the ordinance is applicable to the games in question. These games are bowling games whereby a flat circular disc is slid along a table some 8 feet long. At the end of the table it passes under a partition on which are ten pins arranged as for a game of bowling. These pins are capable of being internally lighted. As the disc passes under the partition it passes over electrical contacts wired to the pin. The passing of the disc over the connection puts out the light of a corresponding pin on the upper surface as if it had been knocked down with a ball. There are no impedimenta in the path of the disc and there is no claim of gambling in its operation.

Returning for a moment to the statute, we find an explicit prohibition against bagatelle and pigeonhole. The ordinance does not carry the words of the enabling act, "or any other tables or implements kept for a similar purpose in any place of public resort." The definition of the ordinance is, therefore, restricted to these two games.

If the games in question are to be prohibited under this ordinance, the authority to support such a prohibition must be found in the amendment bringing pinball games within the ordinance. The entire authority of the city to prohibit the licensing of the machines in question here must be governed by the language the governing body of the city used in adopting the restriction. The ordinance is explicit in its description of what constitutes a prohibitable game. By its terms it requires a game (1) played with balls or spheres; (2) upon a table or board having holes, pockets

or cups into which the balls or spheres may drop; and (3) having arches, pins and springs, or any of them, to control, deflect, or impede the direction or speed of the balls or spheres. This is the only definition contained in the ordinance to guide this court in determining this cause.

Comparing the physical appearance and use of the game in question with the definition contained in the ordinance, we find differences. As we understand the games in question, the player slides a disc in an effort to simulate the knocking down of pins in an actual bowling game. No balls or spheres are used. The table on which the game is played is a flat surface unmarred by any holes or cups. In fact, the game, as it stands, could not be played were there any such orifices in the surface of the table. There are no arches, pins, or springs which control, deflect, or impede the disc which is slid along the surface. Again, such impedimenta in the path of the disc would make the game impossible of play.

To us, there seems to be no relationship between the physical aspects of the game in question and the description contained in the ordinance. The description in the ordinance will cover any type of the so-called pinball games. It cannot, under any method of stretching of the meaning of words, cover the game which is in question here. There is no similarity. Had the governing body desired to have a catch-all phrase to cover all coin games depending on the skill of the player and operated for amusement, the language was available for it to do so. The game, when compared to the regulatory language of the ordinance, seems to fall more certainly under the language of the licensing section of the Municipal Code. Section 104 provides: "The term 'automatic amusement machine' means any mechanical amusement machine or device, the operation of which is governed or controlled by the deposit of a coin or token including, without being limited thereto, any such coin controlled amusement instrument or device

capable of producing or reproducing any vocal or instrumental sounds." This language contains the description of all machines not excluded from licensing under the provisions of section 193-26. It is the only section cited to us with language which covers the machine here.

The city has cited to us several cases from the Appellate Court, which are not persuasive. (*Levins* v. *City of Chicago,* 296 Ill. App. 645; *Coleman* v. *City of Chicago,* 297 Ill. App. 130, and others.) The city has the power under the enabling act to prohibit "any other tables or implements kept for a similar purpose in any place of public resort," but by the terms of the ordinance in question has not done so. It has described what it chose to regulate and it must be bound by the exact definition it has itself selected.

The final arguments made here are concerned with the right of the plaintiffs to a declaratory judgment. The city claims that since *mandamus* would lie in the case, that remedy was, in a sense, exclusive, and plaintiffs were not entitled to a declaratory judgment. *Goodyear Tire and Rubber Co.* v. *Tierney,* 411 Ill. 421.

The declaratory judgment provisions of the Civil Practice Act (Ill. Rev. Stat. 1951, chap. 110, par. 181.1,) provide that a declaratory judgment may be entered in cases of actual controversy to determine rights of parties or to construe a statute. The act, by its terms, is permissive, but it appears the application of it here would have been proper had the court so desired. The statute was designed to provide a speedy and inexpensive method of determining disputes. Its use in cases such as this is proper. *Dean Milk Co.* v. *City of Aurora,* 404 Ill. 331.

The court having erred in construing the ordinance, this cause is reversed and remanded, with directions to enter judgment in conformity with this opinion.

*Reversed and remanded, with directions.*