## Herald Publishing Company *v.* Albert S. Bill, State's Attorney

BALDWIN, O'SULLIVAN, WYNNE, DALY and RYAN, Js.

Argued November 3, 1954—decided January 11, 1955

*Cyril Coleman,* with whom were *John F. Downes* and, on the brief, *William E. Glynn,* for the plaintiff.

*Albert S. Bill,* state's attorney, pro se, with whom, on the brief, was *Douglass B. Wright,* assistant state's attorney.

BALDWIN, J. This action for a declaratory judgment is brought by the plaintiff, a newspaper publisher, against the defendant, the state's attorney for Hartford County. It has been reserved to this court on an agreed statement of facts. The plaintiff, a Connecticut corporation located in New Britain, is engaged in publishing a daily newspaper, "The New Britain Herald," for circulation in New Britain and the adjoining towns. The L & L Super Food Stores is a corporation selling food products at wholesale and retail in two stores operated by it in New Britain. It will be referred to hereinafter as the corporation. From time to time the corporation purchases space in the plaintiff's newspaper to advertise its

products. It submitted certain advertising copy[1] to the plaintiff for publication and advised the plaintiff that it desired to have the advertisement published in connection with the seventeenth anniversary of its doing business in New Britain and that it proposed to submit similar advertisements for publication in the future, particularly during the celebration of its business anniversaries. The plaintiff is ready and willing to accept and publish the advertising copy but has refrained from doing so because it has been advised that publication might involve the risk of criminal prosecution. The question upon which the advice of this court is sought is whether the acceptance and publication of this and similar advertising would constitute a violation of §§ 8667, 8668, 8669 and 8670 of the General Statutes, relating to lotteries, and § 8876, relating to conspiracy.

The proposed advertisement announces 102 free prizes. The first and second prizes are manufactured articles, of substantial value, having recognized trade names. The remaining 100 prizes are not described. The advertisement invites members of the public generally to either of the two stores operated

---

[1] The advertising copy read in part:

"LOOK at THESE

FREE

PRIZES—

"1st PRIZE—NORGE Automatic WASHER, worth $269.00

2nd PRIZE—'JET 99' Super Suction VACUUM CLEANER

ALSO 100 CON[S]OLATION PRIZES. ENTER NOW:

HERE'S ALL YOU HAVE TO DO.

COME IN TO EITHER L & L SUPER FOOD STORE. FILL IN YOUR NAME AND ADDRESS ON THE CARD PRESENTED TO YOU AT THE DOOR. DROP IT IN THE BOX CONVENIENTLY LOCATED. THAT'S ALL THERE IS TO IT! WINNERS OF THE ABOVE PRIZES WILL [BE] CHOSEN AT A DRAWING TO BE HELD AT OUR SOUTH MAIN ST. STORE MAY 29th. ANYONE CAN PARTICIPATE AND IT IS NOT NECESSARY TO MAKE A PURCHASE TO ENTER THIS DRAWING. WINNERS DO NOT HAVE TO BE PRESENT AT THE DRAWING."

by the corporation in New Britain, each person to receive a card at the door. The recipient is required to record his name and address upon the card and to deposit it in a box in the store. On the day stated in the advertisement, and at one of its stores, the corporation will choose the winners of the prizes by what is described as a "drawing," presumably a selection, by chance, from the total number of names deposited in the box, of the names of those who are to receive the prizes. It is not necessary that any recipient of a card purchase anything at the store or be present at the "drawing." The obvious purpose of the plan is to induce members of the public to visit the corporation's stores so that they may thereby become acquainted with the stores' location and the goods displayed for sale. In short, the purpose of the advertisement is to attract prospective customers. That, in itself, is a legitimate end. The question is whether the plan for attracting customers is one forbidden by our statutes.

Before we consider the case on its merits, it is necessary to dispose of a question of jurisdiction. The state's attorney claims that General Statutes, Cum. Sup. 1953, § 2352c, which empowers the Superior Court and the Court of Common Pleas to render declaratory judgments, confers no jurisdiction upon these courts to render such a judgment with respect to liability under the criminal statutes. Our declaratory judgment act and the rules of court adopted under it, Practice Book, §§ 276-280, have been said to be extremely broad and liberal in their provisions. *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 133 Conn. 403, 409, 51 A.2d 907; *McGee* v. *Dunnigan*, 138 Conn. 263, 266, 83 A.2d 491. In *Sage-Allen Co.* v. *Wheeler*, 119 Conn. 667, 673, 179 A. 195, an action asking for a declaratory

judgment, we considered the validity of a regulation of the state board of optometry as it applied to an optometrist who was practicing in a department store. In *Tileston* v. *Ullman,* 129 Conn. 84, 26 A.2d 582, we passed upon the question of the construction and constitutionality of a statute relating to contraceptives, in an action for a declaratory judgment brought by a physician. Upon the petition of a plaintiff liquor dealer, we construed the state liquor laws in relation to certain votes taken with reference to local option for the sale of intoxicating liquors, in *Bania* v. *New Hartford,* 138 Conn. 172, 83 A.2d 165. In these three cases the question was whether the specific statutes would be interpreted in such a manner as to impose penalties, criminal and otherwise, upon the plaintiffs if they pursued certain proposed courses of action. The line of distinction in actions for a declaratory judgment as to criminal liability is between cases concerning statutes which prohibit an act malum in se and cases involving conduct which is malum prohibitum. Where the statute prohibits an act malum in se, there usually can be no serious doubt as to what course of conduct is proscribed. On the other hand, a statute imposing a criminal penalty may affect the course of business activity in such a way as to make some conduct malum prohibitum and yet arouse genuine doubt as to what the statute permits and what it prohibits. Such a situation poses a question of law. Borchard, Declaratory Judgments (2d Ed.) pp. 1020, 1021; 2 Anderson, Declaratory Judgments (2d Ed.) § 624; *New York Foreign Trade Zone Operators, Inc.* v. *State Liquor Authority,* 285 N.Y. 272, 277, 34 N.E.2d 316.

In the case at bar, an old and reputable newspaper publisher seeks the advice of the court regarding the effect of certain criminal statutes on a proposed

course of conduct in its advertising business. There seems to be no limit to the variety of advertising programs. The dilemma of the plaintiff is understandable, and it should not be forced to endure a criminal prosecution in order to enable the courts to resolve the question. The fears of the state's attorney that this case may provide a precedent which will interfere with the administration of justice in criminal cases are unfounded. The courts have a wide discretion under the rules to leave the parties to seek redress by a form of procedure other than an action for a declaratory judgment. Practice Book § 277(c); *Stamford* v. *Connecticut Light & Power Co.,* 18 Conn. Sup. 110, 112; *Updegraff* v. *Attorney General,* 298 Mich. 48, 52, 298 N.W. 400; *Bryarly* v. *State,* 232 Ind. 47, 50, 111 N.E.2d 277; *Johnson City* v. *Caplan,* 194 Tenn. 496, 498, 253 S.W.2d 725. The state's attorney argues that he represents the people of the state of Connecticut in Hartford County only and that a declaratory judgment can conclude only the parties to the litigation. It is inconceivable, however, that other state's attorneys and prosecuting authorities in this state will fail to accede to the decision of this court in this case. *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 41, 61 A.2d 89. Actions for a declaratory judgment have been entertained in other courts where jurisdiction has been questioned because criminal statutes were involved. *Currin* v. *Wallace,* 306 U.S. 1, 59 S. Ct. 379, 83 L. Ed. 441; *Kitt* v. *Chicago,* 415 Ill. 246, 112 N.E.2d 607; *Ostrander* v. *Linn,* 237 Iowa 694, 22 N.W.2d 223; *Harrodsburg* v. *Southern Ry. Co.,* 278 Ky. 10, 128 S.W.2d 233; *Rogers* v. *Commonwealth,* 266 Ky. 679, 99 S.W.2d 781; *Dill* v. *Hamilton,* 137 Neb. 723, 291 N.W. 62; *Erwin Billiard Parlor* v. *Buckner,* 156 Tenn. 278, 300 S.W. 565; *Acme Finance Co.* v. *Huse,*

192 Wash. 96, 73 P.2d 341. The claim of lack of jurisdiction is dismissed.

At the beginning of the discussion of the merits of the case, we point out that the state's attorney concedes that only §§ 8876 and 8667 are involved. The question turns upon the interpretation to be placed upon the latter statute, which reads as follows: "Sec. 8667. Lotteries prohibited. Any person who shall set up any lottery to raise and collect money or for the sale of any property or shall, by any kind of hazard, sell or dispose of any kind of property or set up a notification to induce people to bring and deposit property to be disposed of in any such manner or to risk their money or credit for the purpose of any such sale or disposition, shall be fined not more than one hundred dollars or imprisoned not more than one year." We considered this statute in *State* v. *Dorau,* 124 Conn. 160, 198 A. 573, and held that the operation of a so-called bank night at a motion picture theater came within its prohibitions. In that case the defendant operator of the theater argued that to constitute a lottery three elements must be present: a prize, a chance, and a price. A-118 Rec. & Briefs 356. It has been repeatedly so held in other jurisdictions. *Federal Communications Commission* v. *American Broadcasting Co.,* 347 U.S. 284, 290, 74 S. Ct. 593, 98 L. Ed. 699; *State* v. *Eames,* 87 N.H. 477, 478, 183 A. 590; *State* v. *Hundling,* 220 Iowa 1369, 1371, 264 N.W. 608; *Commonwealth* v. *Wall,* 295 Mass. 70, 72, 3 N.E.2d 28. In the *Dorau* case, supra, 165, we examined the history of § 8667 (then Rev. 1930, § 6332) from its origin in 1728 through its subsequent amendments until it took substantially its present form in the Revision of 1875 (p. 516, § 4). Minor changes in wording appeared in § 6332, Rev. 1930, and the penalty provision was altered slightly

in § 1399, Rev. 1902, but these changes do not affect the substance of the statute. We pointed out, in the *Dorau* case, supra, 168, that the statute "was intended to include acts outside the scope of those which would constitute a lottery," and stated (p. 169) that "[w]hatever may be the result in other jurisdictions not having a statute such as ours, the conduct of 'Bank Night' under the plan operated by the defendant is a violation of our law." We held (p. 168) that "[o]ur statute . . . prohibits not merely lotteries in the strict sense of the term, but certainly covers enterprises of the general nature of lotteries wherein chance is the predominating element, even though those who participate directly risk no money or property of their own." See *Society Theatre* v. *Seattle,* 118 Wash. 258, 260, 203 P. 21; *City of Wink* v. *Griffith Amusement Co.,* 129 Tex. 40, 45, 100 S.W.2d 695.

In the case at bar as well as in the *Dorau* case, supra, two of the recognized elements of a lottery are present. There is a prize and it is to be awarded by chance. In neither case, however, is the participant required to pay any consideration for a chance for the prize. He is not asked to buy any merchandise at the store, just as he was not called upon to purchase a ticket to the theater. If he were, there would be an evasion of the law by the colorable gift of a chance to share in the lottery. Any consideration paid would be not only for merchandise or a theater ticket but for a chance to share in the lottery. *McFadden* v. *Bain,* 162 Ore. 250, 254, 91 P.2d 292; *Iris Amusement Corporation* v. *Kelly,* 366 Ill. 256, 267, 8 N.E.2d 648. However, as we held in the *Dorau* case, supra, the payment of a consideration to participate in the "drawing" is not essential in order for the conduct to be forbidden by our statute. Therefore, before we may hold that what the corporation intends to do

and the plaintiff proposes to advertise is not within the prohibition of § 8667, we must either distinguish the present case from the *Dorau* case on its facts or overrule that case.

The plaintiff contends that this case is distinguishable because the corporation's plan is, in effect, only a "promotional drawing" for a standard piece of merchandise, while bank night was a raffle for a cash prize which increased from night to night if there was no winner. It is also argued that participants in the "drawing" are not required to be present at it, so that, unlike bank night in a theater, there can be no public assemblage charged with the excitement of anticipation which may be turned to disappointment and envy when the winners are announced. Furthermore, it is urged that the corporation's plan is beneficial to business generally because it brings members of the public to the corporation's stores, where they can find a wide variety of staple products from which to select and in that manner broaden their shopping opportunities. These claims present merely a difference in form and not in substance. If the plan proposed by the corporation were put into effect, the result, in the final analysis, would be to arouse the desire to gain something for nothing and play upon other instincts inimical to sound public policy. As we pointed out in the *Dorau* case, supra, the legislature has manifested an intent to discountenance activities exploiting such desires and instincts. The bank night plan and the instant plan are both designed to encourage patronage. They possess essentially the same type of appeal and use the same technique for stirring up public interest. The cases cannot be distinguished on their facts.

We are faced, then, with the prospect of overturning the *Dorau* case, supra. A decision of this court

is a controlling precedent until overruled or qualified. *Daury* v. *Ferraro,* 108 Conn. 386, 389, 143 A. 630. Stare decisis gives stability and continuity to our case law. This court, however, has recognized many times that there are exceptions to the rule of stare decisis. Principles of law which serve one generation well may, by reason of changing conditions, disserve a later one. *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 99, 92 A. 883; *Beardsley* v. *Hartford,* 50 Conn. 529, 541. Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better. *Ziman* v. *Whitley,* 110 Conn. 108, 114, 147 A. 370; *Napier* v. *Peoples Stores Co.,* 98 Conn. 414, 426, 120 A. 295. The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. A court, when once convinced that it is in error, is not compelled to follow precedent. *Smith* v. *Allwright,* 321 U.S. 649, 665, 64 S. Ct. 757, 88 L. Ed. 987. If, however, stare decisis is to continue to serve the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence—a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. Maltbie, Conn. App. Proc., p. 226. This is especially true when the precedent involved concerns the interpretation or construction of a statute. *Pouch* v. *Prudential Ins. Co.,* 204 N.Y. 281, 287, 97 N.E. 731; *Luitze* v. *State,* 204 Wis. 78, 80, 234 N.W. 382; *Walling* v. *Bown,* 9 Idaho 740, 744, 76 P. 318; see *Willott* v. *Willott,* 333 Mo. 896, 899, 62 S.W.2d 1084; 14 Am. Jur. 287. A change in the personnel of the court never furnishes reason to reopen a question of statutory interpretation. *Tileston* v. *Ullman,* 129 Conn. 84, 86, 26 A.2d 582.

*State* v. *Dorau,* 124 Conn. 160, 198 A. 573, was de-

cided in April, 1938. In the succeeding session of the General Assembly a bill (S. B. 840, 1939 Sess.) was introduced for the purpose of giving statutory sanction to bank nights in theaters. It was rejected. The legislature is presumed to be aware of the interpretation which the courts have placed upon one of its legislative enactments and of the effect that its own nonaction, thereafter, may have. *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 6, 54 A.2d 710; *Cashman* v. *McTernan School, Inc.,* 130 Conn. 401, 408, 34 A.2d 874; *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70; *Stamford* v. *Stamford,* 107 Conn. 596, 606, 141 A. 891. The failure of the legislature to amend the law and, particularly, its unwillingness to do so when a proposed change was submitted supply adequate reason for a court's refusal to attempt to effect an amendment by the process of judicial interpretation. *State* v. *Nelson,* 126 Conn. 412, 418, 11 A.2d 856; *Pennsylvania R. Co.* v. *International Coal Mining Co.,* 230 U.S. 184, 198, 33 S. Ct. 893, 57 L. Ed. 1446; see *Federal Communications Commission* v. *American Broadcasting Co.,* 347 U.S. 284, 296, 74 S. Ct. 593, 98 L. Ed. 699. Moreover, § 8667 was enacted in the exercise of the police power of the state in pursuance of a public policy which the legislature has determined. It is not within the province of the court to attempt a change of that policy, because that is a matter with which the legislative branch of the government is primarily concerned.

The acceptance and publication by the plaintiff of advertising in the form which has been presented to it would constitute a violation of §§ 8667 and 8876 of the General Statutes.

In this opinion the other judges concurred.