## Leslie S. Smernoff *v.* United States Fidelity and Guaranty Company

SUPERIOR COURT        NEW HAVEN COUNTY        FILE No. 138909
AT NEW HAVEN

Memorandum filed October 2, 1974

*Donald G. Walsh,* of New Haven, for the plaintiff.

*Mihaly & Mihaly,* of Bridgeport, for the defendant.

GRILLO, J. Fundamentally, this action, one of first impression in this state, presents for determination the following questions: (1) May a party injured through the negligence of an uninsured motorist maintain a tort action against that motorist although the injured party is unable to satisfy the criteria required in General Statutes § 38-323, a section of the so-called "no-fault motor vehicle insurance

law"?[1]   (2) If the injured party is precluded from maintaining that action, does that inability inure to the benefit of an insurer of the injured party to whom had been issued a casualty insurance policy containing the standard uninsured motorists clause as required under the law of this state? See General Statutes §§ 38-175a through 38-175e.

The plaintiff, who was involved in a two-car automobile accident, sustained personal injuries, loss of wages, and property damage, allegedly due to the negligence of the operator of a second vehicle. At the time of the occurrence a valid policy of casualty insurance containing the uninsured motorists clause was in existence. The operator of the second vehicle was uninsured. Following the accident, the plaintiff submitted to his insurer, the defendant, bills for medical expenses totaling $308.25—below the "in excess of" $400 requisite of § 38-323 for instituting a negligence action. Lost wages amounted to $500. These "basic reparations" were paid by the defend-

---

[1] "Sec. 38-323.   CAUSE OF ACTION ALLOWABLE, WHEN.   (a) No cause of action to recover economic loss or non-economic detriment based on negligence arising out of the ownership, maintenance or use of a private passenger motor vehicle may be maintained against an owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided as required by this chapter, or against any person or organization legally responsible for his acts or omissions, unless the injured party has sustained (1) death, (2) permanent injury, (3) fracture of any bone, (4) permanent significant disfigurement, (5) permanent loss of any bodily function, (6) loss of a body member or (7) allowable expense as defined in section 38-319 in excess of four hundred dollars. Any person who receives free medical, hospitalization and surgical care shall be deemed to meet the requirement of subdivision (7) if the reasonable value of such care exceeds four hundred dollars.   (b) The exemption under subsection (a) of a person from liability to pay damages for injury applies only with respect to injury to (1) owners of private passenger motor vehicles with respect to which security is required under this chapter, (2) persons entitled to basic reparations benefits from any such owner or his insurer or through the assigned claims plan, and (3) persons who would be entitled to such benefits but for section 38-331 or 38-332."

ant and accepted by the plaintiff. Thereafter, the plaintiff made demand on the defendant to proceed to arbitration, claiming he was entitled to a sum over and above his "basic reparations" because the $400 rule did not apply, since the operator of the second vehicle was uninsured. The defendant has refused to arbitrate, claiming that the provision of § 38-323 requiring medical care in excess of $400 applies to an uninsured motorist and that, therefore, the defendant is armored with the same defense.

The plaintiff further contends that it is "patently clear" that the tort immunity provided by the no-fault act, in spite of the language contained in General Statutes § 38-327 (e),[2] does not benefit one who not only violates a criminal statute (General Statutes § 38-327 [d])[3] but also fails to comply with §§ 14-112 to 14-144, the Financial Responsibility Law.

The plaintiff insists that § 38-323, absolving one from a cause of action based on negligence, refers only to persons who have provided security. Citing Am. Jur. 2d New Topic Service, No-Fault Insurance, § 14, page 12, the plaintiff points out that failure to maintain the required no-fault coverage

---

[2] "Sec. 38-327. MANDATORY SECURITY REQUIREMENTS. . . . (e) An owner of a private passenger motor vehicle with respect to which security is required who fails to have such security in effect at the time of an accident shall be personally liable for the payment of basic reparations benefits. Such an owner shall have all of the rights and obligations of an insurer under this chapter and shall remain subject to all the obligations of the Financial Responsibility Law, sections 14-112 to 14-144."

[3] "Sec. 38-327. MANDATORY SECURITY REQUIREMENTS. . . . (d) The owner of any private passenger motor vehicle required to be registered in this state who operates it or permits it to be operated in this state is guilty of a class C misdemeanor if he fails to provide the security required by this chapter and shall further be required to provide the proof of financial responsibility required under section 14-112."

results, in some jurisdictions, in a forfeiture of the immunity from tort liability provided by the no-fault statute. He maintains that the "only authority" on the subject demonstrates that our legislature had not given exemption from tort liability to uninsured motorists. While the states which deny insulation from tort liability to uninsured motorists have not been named, we have perused statutes in effect in several jurisdictions.[4] A review of those statutes indicates that the statutes which have stripped the uninsured motorist of the cloak of tort immunity are precise and clear. The phraseology in the no-fault statutes of those states as cited in the footnote makes it abundantly clear that immunity was not intended for uninsured motorists. The language employed in those jurisdictions is far different from that in the statute of this state. (It is interesting to

---

[4] Fla. Stat. 1973, § 627.733. "REQUIRED SECURITY. . . . (4) An owner of a motor vehicle with respect to which security is required by this section who fails to have such security in effect at the time of an accident shall have no immunity from tort liability, but shall be personally liable for the payment of benefits under § 627.736. With respect to such benefits, such an owner shall have all of the rights and obligations of an insurer under §§ 627.730—627.741."

Minn. Stat. § 65B.67 (Minnesota No-Fault Automobile Insurance Act, ch. 408, Laws 1974, § 27, subd. 1 [effective Jan. 1, 1975]). "Every owner of a motor vehicle for which security has not been provided as required by section 8, shall be liable in tort without limitation."

Pennsylvania No-fault Motor Vehicle Insurance Act, Laws 1974, Act No. 176, (effective July 19, 1975). "§ 301. TORT LIABILITY (a) PARTIAL ABOLITION.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that: (1) An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle."

Utah Automobile No-Fault Insurance Act (effective Jan. 1, 1974). Utah Code Ann. § 31-41-9. "LIMITATIONS ON TORT ACTIONS — LIABILITY OF NON-COVERED OWNER. . . . (2) The owner of a motor vehicle with respect to which security is required by this act who fails to have such security in effect at the time of an accident shall have no immunity from tort liability and shall be personally liable for the payment of the benefits provided for under section 31-41-6."

note, incidentally, that Colorado has adopted, with reference to the question involved herein, a statute quite similar to ours.[5])

Pragmatically speaking, we believe that, if the legislature intended to divest the uninsured motorist of the rights afforded under § 38-323, § 38-327 (e) would have been superfluous, since in a negligence action the uninsured motorist would still be liable for damages which would, of course, encompass the same items, among others, as are included in the basic reparations benefits for which the uninsured motorist is liable under § 38-327 (e). See General Statutes § 38-319 (b), (k).[6] An assertion that the

---

[5] Colorado Auto Accident Reparations Act, ch. 94, Laws 1973 (effective Apr. 1, 1974). Colo Rev. Stat. § 13-25-5. "COVERAGE COMPULSORY. . . . (2) Any owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state who fails to have in full force and effect a complying policy covering said motor vehicle at the time of any accident, on account of which benefits under section 13-25-6 (3) to (6) would be payable, shall be personally liable for the payment of such benefits to the person for whom such payment would have been required, if such coverage had been in effect under the terms of section 13-25-7. Such an owner shall have all of the rights and obligations of any insurer under this chapter."

[6] "Sec. 38-319. DEFINITIONS. . . . (b) "Economic loss" means economic detriment resulting from injury and consists only of allowable expense, work loss, and, if injury causes death, survivor's loss, as follows: (1) "Allowable expense" means reasonable charges incurred, whether or not covered by insurance, for reasonably needed products, services and accommodations, including, but not limited to, those for medical, surgical, dental and hospital care, nursing services, ambulance services, x-rays, prosthetic devices, laboratory fees and drugs, rehabilitation, rehabilitative occupational training, and other health treatment and care. Allowable expense also includes reasonable charges for funeral and burial expenses, up to a total amount not exceeding two thousand dollars; (2) "work loss" means economic loss consisting of (i) loss of income from work an injured person who would normally be employed in gainful activity during the period of his disability would have performed had he not been injured, reduced by any income from substitute work actually performed by the injured person or by income the injured person would have earned in available appropriate substitute work which he was

uninsured motorist is not sheltered by the umbrella of immunity of § 38-323 would be inconsistent with the granting of "all of the rights" of an insurer as set forth in § 38-327 (e). While it is observed that § 38-323 refers to an owner of a vehicle who has provided security, a court is not to give absolute effect to a single section or clause of a statute, how-

---

capable of performing but unreasonably failed to undertake and (ii) expenses reasonably incurred in obtaining ordinary and necessary services from others not members of the injured person's household in lieu of those that the injured person would have performed had he not been injured, not for income but for the benefit of himself or his family. Work loss does not include any loss after the death of an injured person; (3) "survivor's loss" means economic loss sustained after an injured person's death by his dependent survivors during their dependency and consisting of the loss of the contributions they would have received for their support from the decedent out of income from work he would normally have performed had he not died and expenses reasonably incurred by his dependent survivors in obtaining ordinary and necessary services from others not members of the decedent's household in lieu of the services he would have performed for the benefit of his household; "dependent survivors" of a deceased injured person include the following survivors only: (i) The surviving spouse if residing in his household at the time of his death and (ii) other persons receiving support from the deceased at the time of his death which would qualify them as dependents of the deceased for federal income tax purposes under the Internal Revenue Code. The dependency of a surviving spouse shall terminate upon remarriage. The dependency of any other person shall continue only so long as such person is under the age of eighteen years or physically or mentally incapacitated from earning or engaged full-time in a formal program of academic or vocational education or training; (4) "non-economic detriment" means pain, suffering, inconvenience, physical impairment, mental anguish and other non-economic loss recoverable under the laws of this state. Non-economic detriment is not economic loss. However, economic detriment, such as loss of income, is economic loss although arising from the interference with work caused by pain and suffering or physical impairment. . . . (k) "Basic reparations benefits" are benefits reimbursing persons suffering economic loss through injury arising out of the ownership, maintenance or use of a private passenger motor vehicle as provided in this chapter." (It is also to be noted that this statute, defining basic reparations benefits, states in subsection (b) (1) that the recoverable damages allowed under the "no-fault" law include the items enumerated, "whether or not covered by insurance.")

ever plain, if there are other provisions inconsistent with an unrestricted and liberal interpretation of that clause or section. *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304.

With reference to the plaintiff's claim that one who has violated a statute carrying a criminal penalty should not be afforded benefits under that same law, we suggest that this is a matter which is better addressed to the legislature.

In view of the action of the General Assembly relative to granting the uninsured motorist exemption from causes of action based on negligence, under the provisions of § 38-323, and subjecting him to personal liability for basic reparations only, it is not within the function of the court to attempt a change in that policy, that being a matter with which the legislature is primarily concerned. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63.

It is concluded that the uninsured motorist is personally liable only for the payment of basic reparations benefits and that since, under the policy of the plaintiff issued by the defendant, the insurer is obligated to pay only the sum of money which the insured could recover from the owner of the uninsured motor vehicle, i.e. $808.25, basic reparations, the request for an order directing arbitration is denied, and it is so ordered.