[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
On November 12, 1993, the plaintiff, Connecticut Humane Society, filed a one count declaratory judgment action against the defendant, Post Publishing Co., seeking a declaration that the defendant's actions constitute a violation of General Statutes § 53-250. On July 14, 1994, the parties filed the following stipulation of facts. The plaintiff, pursuant to General Statutes § 29-108e, Special Act 250 of the Special Laws of 1887, is charged with the care of neglected and cruelly treated animals. The defendant, a Delaware corporation with its principal place of business in Bridgeport, Connecticut, publishes a newspaper known as the Connecticut Post. The defendant has on two occasions conducted a publicity event known as the "Name the Race Horse Contest" ("contest").[1]
The contest rules and entry form appeared regularly in the Connecticut Post in advertisements for the contest. No subscription to or purchase of the Connecticut Post was necessary to enter the contest. The contest rules indicate that entry forms were available at the offices of the Connecticut Post. Advertisements for the most recent contest began appearing in the Connecticut Post in September, 1993. The contest rules stated that entries had to be postmarked no later than midnight November 15, 1993.
At the time of the contest, a certain unnamed standard filly ("the horse") was owned by Walnridge Farm of Cream Ridge, New Jersey. The stated object of the contest was to propose a name for the horse. The contest rules provided that judges from the Connecticut Post would pick a winner of the contest from the proposals submitted. The contest rules did not prohibit out-of-state residents from entering the contest,
Prior to the commencement of the contest, the defendant entered into a contract with Walnridge Farms which provided that Walnridge Farms would take all steps necessary to effect a transfer of title of the horse to the contest winner as designated by the defendant. The contract between the defendant and Walnridge Farms further provided that the defendant would continue to pay the necessary fees, and Walnridge Farms would continue to provide customary feed and maintenance, medical treatment and, if necessary, veterinary attention, plus insurance, for the horse from the effective date of the contract through November 15, 1994. CT Page 11892
The contest rules provided that the winner of the contest could choose to accept a $5000 cash prize in lieu of the horse. Moreover, the contract between the defendant and Walnridge Farms provided that if the cash prize were chosen by the winner, the contract would expire and the horse would remain in ownership of Walnridge Farms. At all times during the contest, the horse remained in its customary stabling at Walnridge Farms.
The contest ended, as provided in the contest rules, on November 15, 1993. Immediately thereafter, the defendant chose a winner, who was a resident of Fairfield. The winning name was Seaside Bistro. The winner chose the $5000 cash prize in lieu of the horse, and the horse remained in the ownership of Walnridge Farms.
The defendant considers the contest to be a unique publicity event that has become identified with the Connecticut Post throughout its area of circulation, which is generally bounded by Westport, New Haven and Shelton. It is the present intention of the defendant to conduct the contest from time to time in the future.
The parties agree that the legal issue presented is not moot because it is "capable of repetition yet evasive of review." Furthermore, neither the plaintiff nor the defendant are aware of any other parties in interest to the issue of whether General Statutes § 53-250 is applicable to the contest conducted by the Connecticut Post.
On July 14, 1994, the defendant filed a motion for summary judgment on the ground that there are no genuine issues of material fact, the record having been established by stipulation of the parties. Further grounds listed in support of the defendant's motion are that: 1) General Statutes § 53-250
is not applicable to the contest at issue; and 2) the animal in question is beyond the territorial jurisdiction of General Statutes § 53-250. As required by Practice Book § 380, the defendant has filed a memorandum and the affidavit of Robert M. Wonneberger in support of its motion. Additionally, on July 29, 1994, the plaintiff timely filed a memorandum of law in support of its cross-motion for summary judgment and in opposition to the defendant's motion for summary judgment. CT Page 11893
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm, 224 Conn. 524,530, 620 A.2d 99 (1993). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party Id. "The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted.) Connell v. Colwell,214 Conn. 242, 247, 571 A.2d 116 (1990).
"The purpose of a declaratory judgment action, as authorized by General Statutes § 52-29 and Practice Book § 390, is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Citations omitted; internal quotation marks omitted.) Wilson v. Kelley, 224 Conn. 110,115, 617 A.2d 433 (1992). "General Statutes § 52-29(a) requires that a declaratory judgment declare rights and other legal relations . . . . Similarly, Practice Book § 390 requires that the plaintiff be in danger of a loss or uncertainty as to his rights or other jural relations and that there be a bona fide issue in dispute or substantial uncertainty of legal relations." (Citations omitted; internal quotation marks omitted.) Id. "Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." Luckenbach Steamship Co. v. United States,312 F.2d 545, 548 (2d Cir. 1963).
 The Superior Court has subject matter jurisdiction `in any action or proceeding to declare rights and other legal relations on request for such a declaration whether or not further relief is or could be claimed. General Statutes § 52-29 . . . . We have consistently construed this broad statutory grant of jurisdiction and the related Practice Book provisions liberally to serve their sound social purpose . . . . Thus, the Superior Court has subject matter jurisdiction over suits for declaratory relief despite the adequacy of other legal remedies.
(Citations omitted; internal quotation marks omitted.) Leoniv. Water Pollution Control Authority, 21 Conn. App. 77, 82, CT Page 11894571 A.2d 153 (1990).
However, in Connecticut, jurisdiction to enter declaratory judgment with respect to liability under criminal statutes is confined to those statutes involving conduct which is malum prohibitum. See Herald Publishing Co. v. Bill,142 Conn. 53, 111 A.2d 4 (1955).
 Where the statute prohibits an act malum in se, there usually can be no serious doubt as to what course of conduct is proscribed. On the other hand, a statute imposing a criminal penalty may affect the course of business activity in such a way as to make some conduct malum prohibitum and yet arouse genuine doubt as to what the statute permits and what it prohibits. Such a situation poses a question of law.
(Citations omitted.) Id. It is clear that such a situation exists in the instant case because the statute in question, General Statutes § 53-250, imposes a criminal penalty and can potentially affect the course of business activity in such a way as to make some conduct malum prohibitum and yet raise genuine doubt as to what it permits or prohibits. It is therefore found that this court has subject matter jurisdiction to entertain the present suit, and to adjudicate the present cross motions for summary judgment.
The defendant argues that General Statutes § 53-250 does not apply to the contest. The defendant argues that General statutes § 53-250 does not broadly proscribe all uses of an animal as a prize or award. Rather, the defendant argues that "the statute forbids only the use of an animal as a prize in the operation of any game or device." The defendant further argues that General Statutes § 53-250 "as a whole, is designed to prevent the possibility of mistreatment arising from the activities of an animal at a particular place . . . . The first clause [of the statute] prohibits using an animal at a place where alms, contributions, [or] donations . . . are being solicited . . . [and] [t]he second clause prohibits the use of an animal where a game is being operated, such as a booth at a fair." The defendant argues that since the horse in this contest is at all times kept at its home stable in New Jersey, at no time is a Connecticut animal exposed to a risk of abuse or neglect. Therefore, the defendant argues, General CT Page 11895 statutes § 53-250 does not apply to the contest.
The plaintiff argues that the contest violates General Statutes § 53-250 in two ways. First, the plaintiff argues that the contest involves the use of the filly for the purpose of soliciting subscriptions to the defendant. Second, the plaintiff argues that the contest uses the filly as a prize or award in the operation of a game. The plaintiff further argues that because both of these activities violate General Statutes § 53-250, it is entitled to summary judgment.
General Statutes § 53-250 provides:
 Any person who uses any animal, reptile or bird for the purpose of soliciting alms, collection, contribution, subscription, donation, or payment of money, or uses any animal or bird as a prize or award in the operation of any game or device, or exhibits any wild animal in connection with any business for the purpose of attracting trade upon any street, highway or public park or at any fair, exhibition or place of amusement, recreation or entertainment, or owns, keeps or has in his custody any animal, reptile or bird for any such purpose, shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both, but no provision of this section shall be construed so as to apply to the exhibition of any animal, reptile or bird by any educational institution or in a zoological garden or in connection with any theatrical exhibition or circus or to the use of any animal in a cow-chip raffle. (Emphasis added.)
"Statutes are to be applied as their words direct." (Citations omitted.) River Dock Pile, Inc. v. O GIndustries, Inc., 219 Conn. 787, 805, 595 A.2d 839 (1991). "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction . . ." (Citations omitted; internal quotation marks omitted.)Packtor v. Seppala and AHO Construction Co.,33 Conn. App. 422, 428, 636 A.2d 383 (1994). "The objective of statutory construction is to give effect to the intended purpose of the legislature . . . . It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute CT Page 11896 by reference to its history and purpose is unnecessary." (Citations omitted.) Rose v. Freedom of InformationCommission, 221 Conn. 217, 225, 602 A.2d 1019 (1992). "The words of [a] statute are to be given their commonly approved meaning, unless a contrary intent is clearly expressed." (Citations omitted; internal quotation marks omitted.) Statev. Kish, 186 757, 764, 443 A.2d 1274 (1982). Applying these well established rules of statutory construction to the present case, the court finds that the defendant's actions in operating a name the race horse contest constitute a violation of General Statutes § 53-250.
Despite the defendants argument that General Statutes § 53-250 is "ambiguous in that it does not define its terms to explain what is meant by use, or what is meant by the operation of a game or device", the plain language of General Statutes § 53-250 prohibits the use of any animal "as a prize or award in the operation of any game or device." It is a basic tenet of statutory construction that when statutory language is clearly expressed, as in the present case, "courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result." (Citations omitted; internal quotation marks omitted.) Johnson v. Manson, 196 Conn. 309,315, 493 A.2d 846 (1985). The statute expressly prohibits theuse of any animal as a prize or award in the operation of anygame or device. The word "use," as defined in Black's Law Dictionary, means "[t]o make use of, to convert to one's service, to avail one's self of, to employ. . . ." Black's LawDictionary, p. 1541 (6th Ed. 1990). Additionally, Black's Law Dictionary defines a "game" as "[a] sport, pastime orcontest." (Emphasis added.) Id., 679. The defendant concedes in the stipulation of facts that its Name the Race Horse Contest offers the winner an award of a horse, or $5000 in lieu of the horse. Thus, the court finds that this contest makes use of a horse as an award to the winner. Therefore, the defendant's actions in operating the name the race horse contest constitutes a violation of General Statutes § 53-250.
If the legislature wished or intended General Statutes § 53-250 to apply only in situations where animals are treated cruelly, it could have done so. Indeed, General Statutes § 53-247, entitled "Cruelty to animals," deals directly with the penalties for the mistreatment of, or cruelty to, animals. CT Page 11897 For this court to construe General Statutes § 53-250 to apply to only the same conduct as § 53-247 would be to render one statute superfluous. Although both statutes are designed to accomplish virtually the same purpose, namely the prevention of the mistreatment of animals, the types of conduct proscribed by each statute are different. General Statutes § 53-247 prohibits, inter alia, the torturing, mutilating, cruel beating, or killing of any animal. General Statutes § 53-250, on the other hand, prohibits, inter alia, the use of an animal as a prize or award in the operation of a game. The court finds that the defendant's operation of its contest is conduct proscribed by General Statutes § 53-250. Accordingly, the defendant's motion for summary judgment on the ground that General Statutes § 53-250 is not applicable to its Name the Race Horse Contest must be denied. Denial of the defendant's motion for summary judgment on this ground necessarily implies that the plaintiff's cross motion for summary judgment must be granted.
In its memorandum of law in support of its motion for summary judgment, the defendant also argues that "[t]he second clause of [General Statutes § 53-250], which is at issue in the present case, must be read in the entirety of the full statute to prohibit the use of an animal as a prize at the place of, and during the operation of, a game or device." The defendant further argues that, consistent with this interpretation, the game or device itself must be taking place at a specific site at which the animal is present to entice the public into competing for the animal as a prize. The defendant argues that all parts of the statute consistently refer to physical use and presence of an animal at a particular site. Finally, the defendant argues that since the horse in its contest is not physically present and is stabled in a place where horses should be, at no time is the horse or any Connecticut animal exposed to a risk of abuse or neglect.
In response, the plaintiff argues that "[n]othing in the language of the statute requires the horse to be present at the scene of the [c]ontest." The plaintiff further argues that if the legislature had intended to require the horse' s presence, it could easily have done so. The plaintiff argues that this reasoning "is confirmed by the fact that . . . the legislature did impose such a requirement in the third clause of [General Statutes] § 53-250." CT Page 11898
The defendant's interpretation and construction of General Statutes § 53-250 do not comport with the rules of statutory construction. The plain language of the statute's second clause prohibits the use of any animal as a prize or award in the operation of any game or device whether or not the animal is present. This court is bound by the words of the legislature, and when the language of a statute is clear and unambiguous, there is no need for construction of the statute by reference to its history and purpose. See Packtorv. Seppala and AHO Construction Co., supra, 33 Conn. App. 428. The second clause of Connecticut General Statutes § 53-250 in no way suggests or requires that the animal must be present at the game in order for a violation to take place.
Analyzing the statute's second clause "in the entirety of the full statute", the defendant's conduct in operating the contest still constitutes a violation of General Statutes § 53-250. General Statutes § 53-250 is designed to proscribe use of animals in four distinct situations. The first clause proscribes the use of any animal for solicitation purposes. The second clause proscribes the use of any animal as a prize or award in the operation of any game. The third clause prohibits the exhibition of any animal in connection with a business for the purpose of attracting trade, and the fourth clause prohibits the ownership of any animal for any purpose enumerated in the preceding clauses. The defendant's operation of a contest in which a horse is used as a prize constitutes conduct that is proscribed by the second clause of the statute.
The final argument advanced by the defendant in its memorandum in support of its motion for summary judgment concerns the reach of General Statutes § 53-250. In its memorandum, the defendant argues that "[g]iving away a free horse in New Jersey is an act beyond the territorial reach of Section 53-250 . . . ."
In response, the plaintiff argues that the location of the filly is irrelevant. Rather, the plaintiff argues that "[i]t is the activity of the alleged violator which is germane to the application of the statute." The plaintiff cites Statev. Trumbull, 24 Conn. Sup. 129, 187 A.2d 445 (1962) to support this proposition.
In State v. Trumbull, supra, 24 Conn. Sup. 129, the CT Page 11899 defendant sought to avoid the reach of a criminal statute applicable to "[a]ny person who uses, forges or counterfeits the individual stamp or label of any mechanic or manufacturer." General Statutes § 53-347 (repealed, 1963, P.A. 51, § 14). The defendant, relying on a strict construction of the term "use," argued that the acts prohibited by the statute occurred outside of Connecticut. State v. Trumbull, supra, 24 Conn. Sup. 137. In construing the scope of the statute, the court looked to the plain meaning of the words used and the purpose for which the statute was enacted. Id., 138. The court concluded that "[t]he `use' is not to be construed so strictly as to require proof of personal execution of the prohibited acts; the statute permits a broader construction and includes procuring or causing such acts to be done." Id., 139. Additionally, the court noted that to establish the defendant' s guilt in "vending or offering to vend" goods with counterfeited labels in violation of the statute, "it was enough to satisfy the statute if the defendant set in operation [in Connecticut] at least one act essential to the commission of the crime." Id., 140.
Against this background, the defendant's activities in the instant case are well within the reach of General Statutes § 53-250. The defendant operates the contest through a newspaper which is circulated in Connecticut. Similarly, the defendant's principal place of business is located in Connecticut. Finally, and most importantly, the conduct proscribed by General Statutes § 53-250 is committed by the defendant in this state. Although the horse used in the contest is stabled in New Jersey, the use of that horse as a prize in a contest run in this state constitutes a violation of the statute. The defendant's operation of the contest falls within the scope of General Statutes § 53-250. Therefore, the defendant's motion for summary judgment denied, and the plaintiff's cross motion for summary judgment is granted.
This is not to say that the New Jersey stable owner is in violation of the Fourth Clause of Connecticut General Statutes § 53-250. That question is not before the court, nor is the question of whether contests awarding certificates for goldfish fall within the ambit of the statute.
Judgment will enter determining that the actions of the defendant in offering a horse as a prize or award in an CT Page 11900 advertisement referred to as the "Name the Racehorse Contest" constitutes a violation of Connecticut General Statutes § 53-250.
Koletsky, J.