CHARLES LEE KLUTTZ *v.* GLENN HOWARD ET AL.
(14680)

PETERS, C. J., BORDEN, BERDON, PALMER and F. X. HENNESSY, Js.

Argued December 1, 1993—decision released February 1, 1994

*Michael J. Belzer,* assistant attorney general, with whom were *William J. McCullough,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellant (defendant Second Injury and Compensation Assurance Fund).

*Robert M. Fitzgerald,* for the appellee (plaintiff).

*Clifford Davis* filed a brief as amicus curiae.

PETERS, C. J. The sole issue in this appeal is whether our Workers' Compensation Act (act)[1] applies to an out-of-state nonresident employee of an out-of-state employer who sustains an employment-related injury

[1] The Connecticut Workers' Compensation Act can be found at chapter 568 of the General Statutes, §§ 31-275 through 31-355a.

as a result of an accident in Connecticut. In considering this issue, we must decide whether to revisit and overrule our recent decision in *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991). The defendant Second Injury and Compensation Assurance Fund (Fund) appealed to the Appellate Court[2] from the decision of the compensation review division (review division) that affirmed the finding and award of the workers' compensation commissioner (commissioner) on the plaintiff's claim for workers' compensation benefits. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the decision of the review division.

The relevant facts are as follows. The plaintiff was a truck driver whose residence was in North Carolina. He was employed by the defendant Glenn Howard, doing business as Southland Distributors, a North Carolina company having an office in North Carolina but not in Connecticut. The plaintiff's duties as a truck operator required him to pick up and deliver produce in numerous states and Canada. The employer did not carry workers' compensation insurance.

In January, 1983, while in the course of his employment and operating a truck owned by his employer, the plaintiff was involved in an accident on Route I-95 in Stratford as he was approaching a toll booth. As a result of the accident, the plaintiff sustained serious injuries and was hospitalized, first in Bridgeport and then in Winston-Salem, North Carolina.

---

[2] General Statutes (Rev. to 1987) § 31-301b provides: "APPEAL OF DECISION OF COMPENSATION REVIEW DIVISION. Any party aggrieved by the decision of the compensation review division upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review division to the appellate court."

The plaintiff filed a workers' compensation claim in Connecticut.[3] The commissioner found that the plaintiff had suffered a total temporary disability for more than one year, had permanent significant scarring of his body, and had sustained some permanent partial disability. The commissioner, thus, ordered the Fund to pay various allowed medical bills, temporary total disability benefits, specific benefits for various scars on the plaintiff's body and specific permanent disability benefits for injuries causally connected to the motor vehicle accident as determined at a future hearing upon the request of either party. Implicit within the commissioner's finding and award was the conclusion that the commissioner had jurisdiction over the claim of the plaintiff for his injuries while in Connecticut.

The Fund appealed the finding and award to the review division, asserting that the commissioner had improperly determined that he had jurisdiction over the plaintiff's claim and had improperly denied the Fund's motion to correct various paragraphs of the finding and award.[4] The review division affirmed the finding and award of the commissioner, stating that, "[i]n the instant matter there is no question that Connecticut is the place where the injury occurred. Thus, under the principles of stare decisis we are bound to follow *Cleveland.*" Under *Cleveland,* the commissioner had jurisdiction over the plaintiff's claim because the plaintiff's injury had occurred in this state.

---

[3] The injury in this case occurred in January, 1983. We adhere to the date of injury rule as the applicable date for determining the rights and obligations as between parties in workers' compensation cases. *Iacomacci* v. *Trumbull,* 209 Conn. 219, 222–23, 550 A.2d 640 (1988). Thus, the applicable statutes are those in effect at the time of the plaintiff's date of injury. Cf. *Chieppo* v. *Robert E. McMichael, Inc.,* 169 Conn. 646, 649–50, 363 A.2d 1085 (1975) (date of injury rule not applicable to changes in appellate procedure).

[4] The commissioner granted in part and denied in part the Fund's motion to correct the finding and award.

On appeal, the Fund contends that the review division improperly affirmed the commissioner's conclusion that he had jurisdiction in the circumstances of this case. The Fund emphasizes that the plaintiff was a North Carolina truck driver, who simply happened to be injured in Connecticut although he worked for a North Carolina employer, who did not carry workers' compensation insurance.[5] We disagree with the Fund's contention.

In *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, we directly addressed the question of the applicability of Connecticut's act to an out-of-state nonresident employee of an out-of-state employer who is injured in the course of employment while in Connecticut. After full briefing and argument, this court, en banc, held that "[t]he remedial purpose of our Workers' Compensation Act supports application of its provisions in cases

---

[5] The Fund also asks this court to modify the commissioner's ruling with regard to the commissioner's denial of its motion to correct. The review division explicitly ruled on this issue. The relevant paragraphs in his decision that the commissioner refused to correct related to the plaintiff's contacts with Connecticut, the reason that he brought a claim in Connecticut, the custom and practice of the Connecticut treasurer's office in treating out-of-state employers with regard to the act, the mode of contribution to the Fund and the fact that the North Carolina workers' compensation act does not have an assurance component. Each of these paragraphs is important to the Fund's legal claim regarding jurisdiction. Since we decline to overrule our decision in *Cleveland* v. *U.S. Printing Ink, Inc.,* 218 Conn. 181, 588 A.2d 194 (1991), the changes that the Fund seeks in its motion to correct would have no impact on the final disposition of this case. Therefore, the commissioner's ruling on the motion to correct must be upheld.

Furthermore, we have stated that "the power and duty of determining the facts [in workers' compensation cases] rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). Under this strict standard of review, we find no reason to overturn the commissioner's findings.

where an injured employee seeks an award of benefits and *Connecticut is the place of the injury,* the place of the employment contract or the place of the employment relation." (Emphasis added.) Id., 195. We see no reason to revisit this determination. Stare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law. Accordingly, "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. Maltbie, Conn. App. Proc., p. 226." *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955); see also *State* v. *Somerville,* 214 Conn. 378, 384–85, 572 A.2d 944 (1990); *White* v. *Burns,* 213 Conn. 307, 335–36, 567 A.2d 1195 (1990). This is not such a case.

Our decision not to reexamine *Cleveland* is reinforced by legislative changes that will limit its precedential value in future cases. In its January, 1993 session, the General Assembly amended the act to exclude from the definition of employee "any person who is not a resident of this state but is injured in this state during the course of his employment, unless such person (I) works for an employer who has a place of employment or a business facility located in this state at which such person spends at least fifty per cent of his employment time, or (II) works for an employer pursuant to an employment contract to be performed primarily in this state." Public Acts 1993, No. 93-228, § 1 (9) (B) (vi).[6]

---

[6] "Employee," as of the date of the plaintiff's injury, was defined as "any person who has entered into or works under any contract of service or apprenticeship with an employer, whether such contract contemplated the performance of duties within or without the state or a sole proprietor or business partner who accepts the provisions of this chapter in accordance with subdivision (5) of this section, and shall include any person elected to serve as a member of the general assembly of this state and shall also include any salaried officer or paid member of any police department or fire department and any elected or appointed official or agent of any city, town or borough, upon vote of the proper authority of such city, town or borough,

## Jesse M. Frankl, commissioner and chairman of the workers' compensation commission, commented in legislative hearings on the significance of this change

including such elected or appointed official or agent, in the state, irrespective of the manner in which he is appointed or employed, which provision shall not be construed as affecting any existing rights as to pensions which such persons or their dependents had on July 1, 1927, or as preventing any existing custom of paying the full salary of any such person during disability due to injury arising in the course of and out of his employment or any volunteer police officer, whether such officer is designated as special or auxiliary, upon vote of the legislative body of the city, town or borough in which such officer serves; but said term shall not be construed to include: (A) An outworker; (B) one whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business; (C) a member of the employer's family dwelling in his house; but, if in any contract of insurance the wages or salary of a member of the employer's family dwelling in his house is included in the payroll on which the premium is based, then such person shall, in the event of his sustaining an injury arising out of and in the course of his employment, be deemed an employee and compensated accordingly; (D) any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week; or (E) an employee of a corporation who is a corporate officer and who elects to be excluded from coverage under this chapter by notice in writing to his employer and to the commissioner having jurisdiction. For the purpose of determination of benefits payable under this chapter for death, disability or injury incurred by volunteer police officers, the average weekly wage of such officers shall be the average production wage in the state as determined by the labor commissioner under the provisions of section 31-309." General Statutes (Rev. to 1983) § 31-275 (5).

The definition was most recently amended in 1993 to provide "(A) 'Employee' means any person who:

"(i) Has entered into or works under any contract of service or apprenticeship with an employer, whether the contract contemplated the performance of duties within or without the state;

"(ii) Is a sole proprietor or business partner who accepts the provisions of this chapter in accordance with subsection (10) [the definition of employer] of this section;

"(iii) Is elected to serve as a member of the general assembly of this state;

"(iv) Is a salaried officer or paid member of any police department or fire department;

"(v) Is a volunteer police officer, whether the officer is designated as special or auxiliary, upon vote of the legislative body of the town, city or borough in which the officer serves; or

"(vi) Is an elected or appointed official or agent of any town, city or borough in the state, upon vote of the proper authority of the town, city or

in the governor's proposal to amend the act.[7] He informed the labor and public employees committee of the General Assembly that the proposal added "a new provision that restricts nonresidents from receiving workers' compensation benefits if they are employed by an out-of-state employer, or if the contract of

borough, including the elected or appointed official or agent, irrespective of the manner in which he is appointed or employed. Nothing in this subsection shall be construed as affecting any existing rights as to pensions which such persons or their dependents had on July 1, 1927, or as preventing any existing custom of paying the full salary of any such person during disability due to injury arising out of and in the course of his employment.

"(B) 'Employee' shall not be construed to include:

"(i) Any person to whom articles or material are given to be treated in any way on premises not under the control or management of the person who gave them out;

"(ii) One whose employment is of a casual nature and who is employed otherwise than for the purposes of the employer's trade or business;

"(iii) A member of the employer's family dwelling in his house; but, if, in any contract of insurance, the wages or salary of a member of the employer's family dwelling in his house is included in the payroll on which the premium is based, then that person shall, if he sustains an injury arising out of and in the course of his employment, be deemed an employee and compensated in accordance with the provisions of this chapter;

"(iv) Any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week;

"(v) An employee of a corporation who is a corporate officer and who elects to be excluded from coverage under this chapter by notice in writing to his employer and to the commissioner; or

"(vi) Any person who is not a resident of this state but is injured in this state during the course of his employment, unless such person (I) works for an employer who has a place of employment or a business facility located in this state at which such person spends at least fifty per cent of his employment time, or (II) works for an employer pursuant to an employment contract to be performed primarily in this state." Public Acts 1993, No. 93-228, § 1 (9).

[7] The language concerning this subsection in the governor's proposal was only slightly different from the language in the subsection that was eventually enacted in No. 93-228 of the 1993 Public Acts. The language in the governor's proposal is as follows: " 'Employee' shall not be construed to include . . . (vi) A person who is not a resident of the state of Connecticut, and who works for an employer that is not based in the state under an employment contract which is not based in the state, even if the injury occurs in Connecticut." House Bill No. 6939, § 11, pp. 21–22 (1993).

employment is out-of-state, and that the only thing that occurs within the state is that they had an accident in the state. This would be an adoption of the minority opinion in the decision of *Cleveland* vs. *the United States Printing,* which is 218 Connecticut 181, also the decision known as the Clerk's decision. That was a 4 to 3 decision, and this provision would adopt the minority position which would enable us to exclude a mere passing through the state as a provision of receiving workers' compensation benefits." Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1993 Sess., pp. 1210–11. During the debate on the floor of the Senate, Senator Michael P. Meotti, explaining the provisions of the bill, stated that "[t]he [workers' compensation] bill narrows compensability standards for . . . nonresidents." 36 S. Proc., Pt. 11, 1993 Sess., p. 3934.

"[O]ur usual presumption [is] that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Citation omitted; internal quotation marks omitted.) *Shelton* v. *Commissioner of Environmental Protection,* 193 Conn. 506, 513–14, 479 A.2d 208 (1984); *Shortt* v. *New Milford Police Department,* 212 Conn. 294, 303, 562 A.2d 7 (1989); *Vartuli* v. *Sotire,* 192 Conn. 353, 364 n.12, 472 A.2d 336 (1984). The statutory amendment of the definition of "employee" and the pertinent legislative history, however, are not sufficient to rebut the usual presumption and to evince a clear intent on the part of the legislature to enact a clarification of, rather than a change in, Connecticut's workers' compensation law. See *Kinney* v. *State,* 213 Conn. 54, 66, 566 A.2d 670 (1989), cert. denied, 498 U.S. 898, 111 S. Ct. 251, 112 L. Ed. 2d 209 (1990).

We conclude, therefore, that, until the 1993 amendment of the definition of "employee" in the act to exclude out-of-state nonresident employees of out-of-state employers who are injured in the state, the interpretation of the act that we announced in *Cleveland* was proper.

The judgment of the review board is affirmed.

In this opinion BORDEN and F.X. HENNESSY, Js., concurred.

BERDON, J., concurring. I concur in the result.

PALMER, J., concurring. I concur in the result. I write separately, however, to express my disagreement with the choice of laws principle adopted in *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991).

I do not believe that the legislature intended that the Second Injury and Compensation Assurance Fund (Fund) be available to compensate an out-of-state nonresident employee of an out-of-state trucking company for injuries to the employee resulting from a motor vehicle accident in Connecticut. In such circumstances, the only basis for compensating the plaintiff from the Fund is the happenstance that the accident occurred in this state. Application of the sensible choice of laws approach suggested for workers' compensation cases by Justice Shea in his dissent in *Cleveland,* whereby we would apply the law of the state with the most significant relationship to the contract of employment rather than the law of the state in which the accident happened to occur; id., 195–97 (*Shea, J.,* dissenting); would have avoided the unintended result reached in *Cleveland.* Applying the choice of laws principle espoused by Justice Shea to this case, the plaintiff, a North Carolina resident employed by a North Carolina company, would be entitled to compensation in North

Carolina, where he has also filed a workers' compensation claim, to the extent allowed by the laws of that state. He would not be eligible for compensation from this state's Second Injury and Compensation Assurance Fund—a fund maintained through mandatory contributions from *Connecticut* employers—because Connecticut is not the state with the greatest interest in the plaintiff's employment relationship.

It is not clear to me, moreover, that the scant legislative history of the 1993 amendment to the definition of the term "employee" reflects the intent of the legislature to change, rather than to clarify, the statutory scheme. That definitional revision, part of a major overhaul of the workers' compensation statutes, drew only brief comment from two speakers, Senator Michael P. Meotti and Commissioner Jesse M. Frankl, chairman of the workers' compensation commission. Meotti's remarks on the proposed 1993 amendments included a single reference to the issue of recovery by nonresidents, without elaboration or discussion. See 36 S. Proc., Pt. 11, 1993 Sess., p. 3934. Frankl, however, specifically noted that the proposed legislation adopted the position of the dissent in *Cleveland,* which, he concluded, more accurately reflected the legislative purpose underlying the Fund: "What occurs in a situation like this is that individuals, the employer in these cases are out of state, and therefore the second injury fund would have to come into being. *And that's not the purpose of the second injury fund. It's to help pay for claims of Connecticut residents where the employer, for one reason or another, doesn't have workers' compensation insurance."* (Emphasis added.) Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1993 Sess., p. 1211. In my view, these comments, and the prompt legislative response to *Cleveland* in connection with the major revisions to the workers' compensation statutes, suggest that the legislature may well have disapproved our holding in that case.

I agree with the majority, however, that stare decisis serves "the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence . . ."; *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 61–62, 111 A.2d 4 (1955); and that "[t]he doctrine requires a clear showing that an established rule is incorrect *and harmful* before it is abandoned." (Emphasis added; internal quotation marks omitted.) *White* v. *Burns,* 213 Conn. 307, 335, 567 A.2d 1195 (1990). Subsequent to the effective date of the 1993 amendment, an out-of-state nonresident employee of an out-of-state employer will not be eligible for compensation from the Fund, so that, as the majority points out, the precedential value of *Cleveland* has been severely limited. Moreover, consideration must be given to the fact that *Cleveland* was decided by this court sitting en banc. I concur, therefore, notwithstanding my disagreement with our holding in *Cleveland.*