Madeira **BENNETT,** Plaintiff,

v.

**BEIERSDORF, INC.** and **Irene Valles,** Defendants.

No. 3–95–CV–624 (GLG).

United States District Court, D. Connecticut.

June 14, 1995.

---

Turner, Brown, McIntosh & Umeugo, P.C., New Haven, CT (Erskine D. McIntosh, Richard H. Greene, of counsel), for plaintiff.

Cummings & Lockwood, Hartford, CT (Jay E. Bovilsky, Kevin D. O'Leary, Joyce A. Williams, of counsel), for defendants.

GOETTEL, District Judge.

Plaintiff Madeira Bennett brought this suit in the Superior Court of the State of Connecticut, Judicial District of Fairfield at Bridgeport, against defendants Beiersdorf, Inc., her former employer, and Irene Valles, a former supervisor. While the bulk of the complaint references state law, two of the nine counts include a federal claim of discrimination on account of race in violation of Title VII (Bennett is black). Defendants removed the case to federal court on the basis of the Title VII claim. Defendants then made a motion to dismiss certain claims and for a more definite statement as to other claims. Plaintiff responded with a motion to amend her complaint to delete the references to Title VII, and a motion to remand.

For the reasons given below, plaintiff's motions to amend [12–1] and remand [13–1] are denied. Defendants' motion to dismiss and for a more definite statement [8–1] is granted as follows, and otherwise denied: the fourth count of plaintiff's complaint is dismissed with prejudice, and the third, sixth and seventh counts are dismissed with leave to replead, as detailed herein.

### 1. Motions to Amend and to Remand

We first consider the motions to amend and to remand. Plaintiff does not explain her reasons for seeking to amend her complaint to remove the federal claim. However, it is quite clear from the fact that plaintiff filed a motion for remand at the same time as the motion to amend, and that the motion to remand is based in part on lack of subject matter jurisdiction, that she is attempting to drop her federal claim in order to return to state court.

■ This is not an acceptable maneuver. A plaintiff whose case has been removed to federal court cannot defeat federal jurisdiction by amending her complaint to excise the federal claims. *See Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 507 (5th Cir.1985) (citing, *inter alia, Hazel Bishop Inc. v. Perfemme, Inc.,* 314 F.2d 399, 403 (2d Cir.1963)). The *Boelens* court quoted *Austwick v. Board of Education,* 555 F.Supp. 840, 842 (N.D.Ill. 1983), as follows:

"The policy behind this rule is obvious. When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipu-

lation [by the] plaintiff ... cannot be condoned."

*Boelens,* 759 F.2d at 507.

The other basis for plaintiff's motion to remand is that the defendants did not post a bond pursuant to 28 U.S.C. § 1446(d). As defendants point out, the bond requirement was deleted from this statute in 1988 by P.L. 100–702 § 1016(b)(3). Plaintiff's motion to remand is denied.

We assume that plaintiff had no reason for seeking to amend her complaint other than to defeat federal jurisdiction. We will accordingly deny the motion to amend as moot. In any event, plaintiff did not need the court's permission to amend her complaint, because defendants have not yet answered. *See* Fed.R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served").

*2. Motion to Dismiss and for a More Definite Statement*

▇▇▇ We now turn to defendants' motion to dismiss and for a more definite statement. Defendants argue that the fourth, sixth and seventh counts of the complaint must be dismissed for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6). Since this is a motion to dismiss we accept all of the allegations in the complaint as true, and draw all inferences in favor of the plaintiff. *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 64 (2d Cir.1986). We can dismiss under Rule 12(b)(6) only if "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

**A. Breach of Covenant of Good Faith and Fair Dealing**

Defendants argue that the fourth count, alleging breach of the covenant of good faith and fair dealing, fails to allege that defendants' actions violated an important public policy, as required when an at will employee asserts such a claim. *See Morris v. Hartford Courant Co.,* 200 Conn. 676, 679, 513 A.2d 66

(1986). The fourth count states, in relevant part:

11. The Plaintiff maintained a superior job performance record but was nonetheless denied promotion and advancement by the Defendant Beiersdorf.

12. The Defendant Beiersdorf by failing to investigate or otherwise rectify the promotional situation of the Plaintiff violated its duty of good faith and fair dealing owed to the Plaintiff, to the Plaintiff's further loss and detriment.

Plaintiff, in her objection to defendants' motion, argues that the public policy violation in this case is that of prohibiting discrimination in employment on the basis of race.

▇▇▇ However, it is not sufficient simply to point to an important public policy—a plaintiff bringing a claim for violation of the covenant of good faith and fair dealing must also establish that she does not otherwise have an adequate means of vindicating that public policy. *See Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1985). For example, the public policy against age discrimination in employment cannot justify a claim based on the covenant of good faith and fair dealing, because there are already sufficient statutory remedies. *Id.* As with age discrimination, the statutory remedies for race discrimination in employment are sufficiently well developed to preclude an independent cause of action. Indeed, plaintiff's complaint alleges violations of both state and federal statutes dealing with race discrimination in employment. Defendants' motion to dismiss is granted as to the fourth count, with prejudice.

**B. Negligent Infliction of Emotional Distress**

The sixth count alleges that Valles, Bennett's supervisor, negligently inflicted emotional distress on Bennett. Specifically, the complaint alleges that Valles made many offensive and denigrating remarks to and about plaintiff, all unwarranted, and unjustly criticized plaintiff's work. Although the complaint does not clearly pin down the time frame, Valles' conduct apparently began in June 1992, when she began supervising Bennett, and apparently ended in July 1994, when Bennett left her job with Beiersdorf.

Defendants argue that this is a personal injury claim, and as such is barred by Connecticut's Workers' Compensation Act ("WCA"), which is the exclusive remedy for damages resulting from "personal injury" sustained by employees during their employment. C.G.S.A. § 31–284(a). For the period before July 1, 1993, defendants are correct. Up to that date, emotional distress was compensable under the WCA as a "personal injury" as long as it arose out of and in the course of employment. *See Vorvis v. Southern New England Tel. Co.*, 821 F.Supp. 851, 856 (D.Conn.1993); *Williams v. Avco Lycoming*, 755 F.Supp. 47, 51 (D.Conn.1991). The complaint clearly states that the alleged emotional distress arose out of and in the course of employment.

Plaintiff, however, points out that the WCA was amended effective July 1, 1993 to exclude from the definition of "personal injury . . . [a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." C.G.S.A. § 275(16)(B)(ii).[1] Thus, since the WCA's bar on common law claims only applies to "personal injuries," and since after July 1, 1993 mental or emotional impairment that does not arise from a physical injury or occupa-

tional disease is not a "personal injury," it follows that the WCA does not bar an action to recover for such impairment incurred after July 1, 1993. (In Connecticut, the applicable statutes in workers' compensation cases are those in effect on the date of the injury. *Kluttz v. Howard*, 228 Conn. 401, 403 n. 3, 636 A.2d 816 (1994).) This straightforward logic has been followed by courts in similar legal contexts. *See Silva v. The Stop & Shop Companies, Inc.*, No. 92–0295633, 1993 WL 7656 (Conn.Super.Ct., Judicial District of Fairfield at Bridgeport, January 12, 1993) (pre-amendment case holding that an injury which was in its essence non-physical was not covered by the WCA, and thus could support a tort claim), *discussed in Farago v. Pfizer*, No. 52 49 11, 1993 WL 171771 (Conn.Super.Ct., New London Judicial District at New London, May 17, 1993); *see also Robards v. Gaylord Bros., Inc.*, 854 F.2d 1152, 1157–58 (9th Cir.1988) (interpreting California's worker compensation laws as not allowing recovery for negligent infliction of emotional distress when there has been no physical injury or disability, and thus as not barring a tort claim).[2]

From the foregoing, it is evident that there are two problems with plaintiff's claim for negligent infliction of emotional distress,

---

1. The amendment further scaled back the definition of "personal injury," as follows:

   (B) "Personal injury" or "injury" shall not be construed to include:
   (i) An injury to an employee which results from his voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity;

   .     .     .     .     .

   (iii) A mental or emotional impairment which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination.
   C.G.S.A. § 31–275(16)(B).

2. We are aware that a Massachusetts court interpreting an arguably similar amendment to Massachusetts' Workers' Compensation Act ("MWCA") in a similar legal context did not follow the plain meaning of the MWCA. *See Catalano v. First Essex Savings Bank*, 37 Mass. App.Ct. 377, 639 N.E.2d 1113, *review den.*, 419 Mass. 1101, 644 N.E.2d 225 (1994). However, as explained below, the MWCA is sufficiently different from the Connecticut WCA that *Catala-*

*no* should not be considered persuasive authority.

Under the MWCA, just as in Connecticut, a necessary condition for invoking the bar against a common law action is that the condition complained of is a "personal injury," as statutorily defined. *See Sarocco v. General Elec. Co.*, 879 F.Supp. 156, 161 (D.Mass.1995). The *Catalano* court found that when the Massachusetts legislature amended the MWCA to exclude from the definition of "personal injury" any mental or emotional disabilities arising from bona fide personnel actions, except when such action was the intentional infliction of emotional harm, the legislature did not intend to allow a civil action for negligent infliction of emotional harm. *Id.* 639 N.E.2d at 1116. The court stated:

It is obvious that the Legislature wished to protect the employer from liability under the Act for claims arising out of bona fide personnel actions unless motivated by an intent to inflict emotional distress. In those circumstances, it seems unlikely that the Legislature intended to preserve a civil action for claims based on negligent infliction of emotional distress that arise from a bona fide personnel action. To do so would negate not only the purpose of relieving employers from the finan-

as currently pled. First, to the extent it is based on injury occurring before July 1, 1993, it is barred by the exclusivity provision of the WCA. Second, even after the amendment, plaintiff's claim is partially barred, because it seeks compensation not only for "mental or emotional impairment," but also for physical ailments, including hypoglycemia, fatigue, aggravation of the stomach, and weight loss. Accordingly, defendants' motion to dismiss is granted as to the sixth count, with leave to replead this claim so that it only seeks recovery for mental or emotional impairment that did not arise from a physical injury or occupational disease, and that arose after July 1, 1993.

## C. Tortious Interference with a Contract

■ The seventh count alleges that Valles, through her "offensive and denigrating re-

cial burdens of such claims, but would also negate the intended purpose of the Workers' Compensation Act to provide a uniform, statutory remedy for injured workers, in contrast to a piecemeal, tort-based system. *Id.* (citations omitted).

The Connecticut amendment in this case differs significantly from the Massachusetts amendment at issue in *Catalano*. In contrast to the Connecticut legislature's simple rejection of any recovery under the WCA for purely psychological injuries, the Massachusetts legislature's allowance of recovery for one particular type of purely psychological injury creates a more comprehensive scheme that suggests an intent to occupy the field of recovery for purely emotional harm, to the exclusion of traditional tort remedies. No such intent to preclude traditional remedies can be read into the Connecticut legislature's amendment to the WCA.

Any lingering doubt as to this issue is put to rest by the legislative history of the Connecticut amendment. In the Connecticut House of Representatives, Representative Lawlor offered the amendment to the WCA that, *inter alia,* added the current statutory language that removes purely psychological injury from the definition of "personal injury." Representative Garcia objected to this portion of the amendment, and the following exchange occurred:

REP. GARCIA:

Mr. Speaker, I rise to oppose this amendment. Under current law, most emotional and mental injuries are compensated. This amendment allows no benefits for emotional injury. As a woman and a minority, I have a serious concern over what is being proposed here.

Minorities and single parent women make up the largest population of the state underclass. All these women will suffer the most if this amendment is enacted the way it is pro-

marks to and about" Bennett, and unjust criticism of Bennett's work, tortiously interfered with Bennett's contract of employment with Beiersdorf. Defendants argue that this claim cannot be brought against Valles, because she was Beiersdorf's agent. As the court in *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 480 A.2d 610 (Conn.Super.Ct.1984), put it:

[a]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.

posed[, s]ince they will lose the right to be compensated if they are emotionally harassed at their place of employment. This is grossly unfair.

There are several ways an employer can harass a woman. He can make demands on her. It doesn't necessarily have to be sexual, but how about constantly criticizing or demeaning your work performance? There are some employers out there who love to humiliate their workers. Especially if they want to get rid of them.

A woman [who is] asked to work hours other than the ones she was hired to work can be put in a situation where she would have to decide between her job and her sanity, really. Some women have committed suicide over emotional stress. It can really be an emotional hell.

. . . . .

REP. LAWLOR:

... I wanted to directly respond to Representative [Garcia's] assertion a moment ago. Make it very clear that in each of the instances that she cited, those injuries would be either compensable under workers' compensation ... or would allow a direct right of action. You would be able to sue or you would be able to go to the Workers' Compensation Commission. No doubt about that. This bill does not affect it either way.

(Debate on amendment "A" to P.A. 93–228, May 20, 1993) (available on microfilm in Connecticut State Law Libraries).

The last quoted paragraph of Representative Garcia's remarks suggests a claim of negligent infliction of emotional distress. Representative Lawlor's response strongly indicates that there was no legislative intent to bar tort remedies for such claims.

*Id.* at 60–61, 480 A.2d 610; *accord Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725, 733 (D.Conn.1979). An agent may be said to be acting for "personal gain" if she seeks personal financial gain, or if she is motivated by a personal animus. *See Murray,* 40 Conn.Supp. at 61, 480 A.2d 610 ("[T]ort liability should be swiftly imposed whenever an officer, director, employee or stockholder induces a breach of contract for private benefit or to satisfy personal feelings against a third party.") (citing *Bradkin v. Leverton,* 32 A.D.2d 1057, 1058, 303 N.Y.S.2d 1020 (1969)); *see also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 553 (5th Cir.1981).

■ Plaintiff argues that an allegation that Valles interfered with Bennett's promotional opportunities because of Valles' alleged racial animus amounts to an allegation that Valles used her corporate power improperly for personal gain. We agree. A corporate officer who influences personnel decisions on the basis of racial prejudice can be fairly said to be acting out of personal animus, rather than in the corporate interests (unless, of course, the corporation itself has a policy of racial discrimination, which defendants obviously are not claiming).

■ However, the allegation that racial animus was behind Valles' alleged tortious interference with Bennett's employment contract is only made in plaintiff's motion papers, rather than in the complaint. The complaint does allege that both Valles and Beiersdorf subjected Bennett to differential treatment on account of her race, but this claim is not incorporated into the tortious interference claim. At best, the tortious interference claim vaguely alludes to racial animus ("The Defendant Valles made many offensive and denigrating remarks to and about the Plaintiff.") Accordingly, defendants' motion to dismiss is granted as to the seventh count, with leave to replead.

## D. More Definite Statement

■ In addition to requesting dismissals of several counts, as discussed above, the defendants move for a more definite statement as to two other counts. The third count states that Bennett took courses to prepare herself for promotion, trained numerous Beiersdorf employees, and expressed to her superiors her desire for promotion, and then was not promoted. This count alleges a breach of the terms and conditions of employment. Defendants move for a more definite statement of this claim, pursuant to Federal Rule of Civil Procedure 12(e): "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

We agree that this count is too vague, in that the nature of the supposed contract of employment is completely unclear. Plaintiff's motion papers suggest a more specific allegation: that the "extra efforts" detailed in the third count were part of a quid pro quo whereby Bennett was supposed to have been promoted. Defendants' motion for a more definite statement is granted. Plaintiff shall replead the third count with sufficient specificity to reasonably allow a responsive pleading.

■ Defendants also request a more definite statement as to the ninth count, which defendants consider merely duplicative of the eighth count. The eighth count alleges that both Valles and Beiersdorf discriminated against Bennett on the basis of race in violation of federal and state law. The ninth count alleges that Beiersdorf is liable for any discriminatory acts by Valles under the doctrine of respondeat superior. We do not see any problem with stating a claim under respondeat superior in a separate count from direct claims of discriminatory treatment. Defendants' request for a more definite statement is denied as to the ninth count.

**SO ORDERED.**