Stewart MOSCOVITCH, Administrator of the Estate of Nitai Moscovitch, Deceased and Stewart Moscovitch, Individually, Plaintiff,

v.

DANBURY HOSPITAL, Vitam Center, Inc., and Physicians Health Services, Inc., Defendants.

No. Civ. 3:97CV1654(CFD).

United States District Court, D. Connecticut.

Oct. 23, 1998.

Karen E. Koskoff, Joel H. Lichtenstein, Koskoff, Koskoff & Bieder, PC, Bridgeport, CT, for Plaintiff.

Matthew Scott Hirsch, Heidell, Pittoni, Murphy & Back, New Canaan, CT, for Danbury Hosp.

Thomas J. Hagarty, Jr., Halloran & Sage, Hartford, CT, for Vitam Center, Inc.

Theodore J. Tucci, Jean Elizabeth Tomasco, Robinson & Cole, Hartford, CT, for Physicians Health Services, Inc.

## MEMORANDUM OPINION AND ORDER

DRONEY, District Judge.

The plaintiff, Stewart Moscovitch, individually and as administrator of Nitai Moscovitch's estate, brought this action in the Connecticut Superior Court against the defendants Danbury Hospital, Vitam Center, Inc. ("Vitam") and Physicians Health Services, Inc. ("PHS"). The defendant PHS removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b) (1994), asserting that the complaint contains claims arising under federal law to recover benefits due under a health care plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1994 & Supp.II.1996).

The plaintiff and the defendants Danbury Hospital and Vitam filed motions to remand this action to state court, arguing that it does not set forth a federal claim under ERISA and that, as a result, this court does not have original jurisdiction to hear this case. For the reasons set forth below, the motions to remand are GRANTED.

## I. BACKGROUND

The plaintiff's employer, Silicon Valley Group Lithography, Inc. ("Silicon Valley"), had an employee benefits plan which offered health benefits to eligible employees and their dependants through a group medical plan administered by PHS. The plaintiff,

through his employment with Silicon Valley, enrolled in the PHS medical plan. The parties agree that the medical plan administered by PHS is an "employee welfare benefit plan" governed by ERISA. *See* 29 U.S.C. §§ 1002(1) and 1003(a). Under the terms of the medical plan, PHS provided health insurance coverage for the plaintiff's adolescent son, Nitai Moscovitch (the "decedent"), who was admitted to Danbury Hospital on July 24, 1995, after twice attempting to commit suicide. The decedent was transferred from Danbury Hospital to Vitam on July 31, 1995, for continued treatment. On the day of his arrival at Vitam, the decedent committed suicide. The plaintiff filed this action in the Connecticut Superior Court on July 18, 1997.

## A. The Original Complaint

The original complaint in the Connecticut Superior Court contained six counts. The plaintiff, in his capacity as administrator of the decedent's estate, claimed that Danbury Hospital and Vitam were negligent in their care and treatment of the decedent, and also violated Connecticut General Statutes ("Conn.Gen.Stat.") sections 17a–541 and 17a–542 of the Connecticut patients' bill of rights.[1] (Complaint, Counts 1, 3). The plaintiff also claimed that the actions of Danbury Hospital and Vitam deprived him of the services, companionship and society of his son. (Complaint, Counts 2, 4).

The claims against PHS, brought by the plaintiff in his capacity as administrator of the decedent's estate, were found in Count Five and Count Six. Count Five alleged that PHS, directly and through its agent Vitam, was negligent and failed to provide the decedent with the appropriate standard of care and treatment in violation of the decedent's rights under Conn.Gen.Stat. sections 17a–541 and 17a–542.

Count Six alleged that PHS is a "provider of health insurance benefits for the plaintiff's decedent" and violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. section 42–110a *et seq.* (1995)[2], when it deprived the decedent of appropriate mental health insurance benefits because of cost containment considerations. Specifically, Count Six stated that although PHS initially authorized the admission of the decedent to Danbury Hospital for treatment of his depressive disorder and attempted suicide, it terminated the inpatient treatment at Danbury Hospital and required the decedent to transfer to Vitam. Count Six also alleged that Vitam was a facility inappropriate for the decedent because it was only prepared to treat adolescents with substance abuse problems, not persons with the type or magnitude of the problems of the decedent.

## B. The Removal and Motions to Remand

On August 15, 1997, PHS filed a notice of removal of the plaintiff's complaint from the Connecticut Superior Court to this court. In its removal petition, PHS asserted that removal was proper because this court has original jurisdiction over the claims against

1. Conn.Gen.Stat. section 17a–541 (1995) provides:

 No patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and contract, except in accordance with due process of law, and unless such patient has been declared incapable pursuant to sections 45a–644 to 45a–662, inclusive. Any finding of incapability shall specifically state which civil or personal rights the patient is incapable of exercising.

 Conn.Gen.Stat. section 17a–542 (1995) provides:

 Every patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to, (1) reasonable notice to the patient of his impending discharge, (2) active participation by the patient in planning for his discharge and (3) planning for appropriate aftercare to the patient after his discharge.

2. CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. section 42–110b(a).

PHS pursuant to 28 U.S.C. § 1331 (1994).[3] *See* 28 U.S.C. § 1441(a) and (b) (civil action filed in state court may be removed to federal district court if the district court has original subject matter jurisdiction). PHS contended that the complaint arose under federal law because it stated a claim under ERISA § 502(a) by seeking to recover benefits due under an ERISA plan. In support of its removal of the plaintiff's complaint, PHS also relied on the decision in *Metropolitan Life v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

On September 5, 1997, the plaintiff filed a motion to remand this action to the Connecticut Superior Court. The plaintiff's motion challenges the removal on the grounds that PHS failed to obtain the consent of its co-defendants before removing the case and also disputes PHS's contention that the complaint raises a federal question. Specifically, the plaintiff states that he is not making a claim to recover benefits, enforce rights or clarify rights to future benefits under an ERISA plan, nor making a claim which relates to the quantity of the benefits the decedent received. The plaintiff contends that his claims against PHS relate solely to the quality of the medical care the decedent received, and are beyond the scope of ERISA.

On September 25, 1997, Danbury Hospital filed its motion to remand this case to the Connecticut Superior Court. Danbury Hospital, like the plaintiff, argues that the removal by PHS is not permitted since the complaint does not raise a federal question under ERISA. Finally, on May 5, 1998, Vitam requested permission to join in the motions to remand of the plaintiff and Danbury Hospital and adopt their arguments.

### C. The Amended Complaint

On the same day the plaintiff filed his motion to remand, he also filed a motion to amend his complaint in this court. The motion was granted and the amended complaint was filed on September 29, 1997.

The amended complaint is brought in five counts. As in the original complaint, Counts One and Three allege that Danbury Hospital and Vitam, respectively, were negligent in their care and treatment of the decedent and violated the decedent's rights under Conn. Gen.Stat. sections 17a–541 and 17a–542. Count One was also revised to allege that PHS and Vitam were the agents of Danbury Hospital and Count Three was revised to allege that PHS and Danbury Hospital were the agents of Vitam. The result of these amendments is that the plaintiff now attributes the alleged negligence of all three defendants to Danbury Hospital and Vitam. Counts Two and Four are identical to the loss of consortium claims made by the plaintiff in the original complaint.

The most significant difference between the original complaint and the amended complaint is the elimination of Count Six, which, as previously stated, charged PHS with a CUTPA violation for denying the decedent health benefits he was due under the plaintiff's medical plan. In addition, Count Five, like Counts One and Three, has been amended to allege that the actions of Danbury Hospital and Vitam are attributable to PHS under the theory they were the actual or apparent servants, agents or employees of PHS.

Count Five also includes twenty-nine new allegations of negligent conduct related to the quality of the care and treatment the decedent received from PHS and its agents.

### II. DISCUSSION

The motions to remand raise several difficult and complex issues. In deciding whether the plaintiff's original complaint was properly removed, the court must first consider whether PHS was required to obtain the consent of Danbury Hospital and Vitam before removal. If PHS did not need the consent of its co-defendants before removing this case, the court must then examine the "well-pleaded complaint rule" and its interpretation in *Metropolitan Life v. Taylor, supra*, to determine whether the complaint provides this court with jurisdiction under ERISA. In that analysis, the court must also decide whether it is proper to consider

---

**3.** 28 U.S.C. § 1331 provides that: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

the amended complaint. The court will also address the difference between the jurisdictional mandate of complete preemption under ERISA § 502(a) and the defense of conflict preemption under ERISA § 514(a).

## A. Consent for Removal

■ It is undisputed that PHS failed to obtain the consent of its co-defendants Danbury Hospital and Vitam before removing this case.[4] The plaintiff argues that without the consent of Danbury Hospital and Vitam, removal was improper. PHS responds that it did not need the consent of its co-defendants to remove this case.

■ "Although all defendants must ordinarily join in a removal ... this is not required where a case involving a federal claim under 28 U.S.C. § 1331 is removed [by one defendant] and a separate claim [against a different defendant] not independently within federal jurisdiction is involved." *Costantini v. Guardian Life Insurance Co.*, 859 F.Supp. 89, 90 (S.D.N.Y.1994). *See also* 28 U.S.C. § 1441(c). In that situation, even though the entire complaint is removed to federal court, only the defendants who have the right to remove the action to federal court are required to consent to removal. *See Parisi v. Rochester Cardiothoracic Assocs.*, No. CIV-91–6387T, 1992 WL 470521 (W.D.N.Y.1992) (citing cases from other district courts and concluding that consent to removal is only required from defendants who could otherwise remove the case themselves).

Under the allegations of the complaint filed in the state court, Danbury Hospital and Vitam were not able to remove this case since the plaintiff's claims against those defendants were purely state law claims and the parties lacked complete diversity of citizenship.[5] PHS was the only defendant that had grounds for removal and, therefore, was entitled to seek removal of this case without obtaining the consent of Danbury Hospital and Vitam. *See Parisi*, 1992 WL 470521 at

*2. Accordingly, the court finds that consent from Danbury Hospital and Vitam was not required for PHS to seek removal of this action. The separate issue of whether this action should be removed is addressed below.

## B. Removal

### 1. The Well–Pleaded Complaint Rule

■ For the purposes of determining removal jurisdiction, a district court's assessment of whether a complaint raises a federal question is generally governed by the "well-pleaded complaint rule," which requires that the court consider only the allegations in the complaint, not the matters raised in defense by the defendant. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61, 63 (D.Conn.1990); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."). "The well-pleaded-complaint rule confines the search for a basis of federal question jurisdiction to 'what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may impose.'" *Lupo v. Human Affairs Int'l. Inc.*, 28 F.3d 269, 272 (2d.Cir.1994) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)).

■ There is, however, one corollary to the well-pleaded complaint rule recognized in the *Metropolitan Life* decision which provides that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. 1542;

---

4. In its removal papers PHS represented that, despite its efforts, it was unable to contact the legal representative of Danbury Hospital to obtain consent for removal. PHS also stated that Vitam did not oppose or join in the motion at that time. Subsequent to the removal, both Dan-

bury Hospital and Vitam raised objections to removal and moved to remand this action.

5. The nature of the plaintiff's claims against the defendants are discussed more extensively in Section I.A. and Section II.B.3.

accord *Franchise Tax Bd. of Cal.,* 463 U.S. at 23, 103 S.Ct. 2841; *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (extending complete preemption to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185). The Supreme Court has determined that § 502(a)(1)(B) of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a)(1)(B) [6], is one of the few areas of law which falls within the complete preemption exception to the well-pleaded complaint rule. *Metropolitan Life,* 481 U.S. at 64–65, 107 S.Ct. 1542. In the ERISA context, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 66, 107 S.Ct. 1542. In other words, "if [a plaintiff's] state law claim is within the scope of § 502(a) it is completely preempted regardless of how he has characterized it." *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1488 (7th Cir.1996) (quoting *Rice v. Panchal,* 65 F.3d 637, 642 (7th Cir. 1995)). The issue in this case, therefore, is whether the plaintiff's claims fall within the complete preemption ambit of ERISA § 502(a).

### 2. Which Complaint Controls?

■ Before addressing the issue of complete preemption under ERISA § 502(a), the court must decide which complaint to consider because the plaintiff amended his complaint and substantially altered his allegations against PHS after the motion to remand was filed. In the context of removal, "[i]t is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." *Collins v. Dartmouth Plan, Inc.,* 646 F.Supp. 244, 245 (D.Conn.1986) (citation omitted). Ordinarily, a plaintiff cannot defeat removal by amending the complaint to omit the basis for federal jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294–96, 58

S.Ct. 586, 82 L.Ed. 845 (1938); *Bennett v. Beiersdorf,* 889 F.Supp. 46, 48 (D.Conn.1995) ("A plaintiff whose case has been removed to federal court cannot defeat federal jurisdiction by amending her complaint to excise the federal claims."). The policy behind this rule was stated in *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 507 (5th Cir.1985):

> "When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the plaintiff] ... cannot be condoned."

*Id.* (citation omitted).

Here, the plaintiff's amended complaint was designed, at least in part, to remove any potential basis for federal jurisdiction in this case. The plaintiff's efforts were the apparent result of PHS's removal petition, which sought to recharacterize the plaintiff's state law negligence and CUTPA claims against PHS as ERISA claims. However, this case does not present a situation where the plaintiff chose a state forum, yet still intentionally elected to press a federal claim. It does not appear that the plaintiff intended his original claims against PHS to be federal in character and he did not seek relief under a federal statute. This, of course, does not mean that the plaintiff's claims against PHS cannot be removed to federal court; it just indicates that the plaintiff's attempt to amend his complaint is not the type of forum manipulation which concerned the court in *Boelens.* Moreover, the plaintiff has amended his complaint early in the litigation, prior to the filing of a responsive pleading, the initiation of discovery or the entry of a scheduling order.

---

**6.** Section 502(a)(1)(B) provides:
A civil action may be brought—
(1) by a participant or beneficiary—
***

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Under these circumstances, it is appropriate to consider the amended complaint to determine whether the plaintiff's claims are preempted by ERISA § 502(a). *See Certilman v. Becker*, 807 F.Supp. 307, 310 (S.D.N.Y.1992) ("The pleadings were amended early in the litigation with no prejudice to defendants, and a remand to state court would merely effectuate plaintiffs' original choice of state forum. In such a case, the federal courts' traditional aversion to forum shopping is not substantially implicated."); *cf. Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 356–357 & n. 12, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (forum manipulation concerns over whether a court should consider an amended complaint for the purposes of jurisdiction are legitimate and serious but they are only one of the balance of factors to be considered by a court when deciding whether to retain jurisdiction or remand a case). Accordingly, this court will consider the allegations of the amended complaint in deciding the motions to remand.

### 3. ERISA § 502(a)

■ The amended complaint filed by the plaintiff eliminated the CUTPA claim against PHS for its failure to provide continuing coverage for the decedent's inpatient care at Danbury Hospital. PHS maintains, however, that Count Five of the amended complaint, which contains allegations of negligence against PHS, still falls within the scope of ERISA § 502(a). As noted earlier, ERISA § 502(a) completely preempts any state law claim brought by a plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B). The plaintiff's claims against PHS, as set forth in Count Five of the amended complaint, fall outside the scope of ERISA § 502(a) because they are in the nature of claims for medical negligence, not claims for the improper denial of plan benefits.

The allegations of Count Five which PHS argues bring the plaintiff's claims within the scope of ERISA § 502(a) are: PHS improperly terminated the decedent's treatment at Danbury Hospital; improperly transferred plaintiff's decedent to Vitam; refused to provide psychiatric services at another inpatient facility which would have been more appropriate for the decedent's condition; improperly determined that plaintiff's decedent should be transferred to a drug treatment program; failed to provide the decedent and his family with alternative treatment options at other facilities; and failed to provide inpatient care to the decedent at Danbury Hospital.

Viewing these allegations in context with the other allegations of Count Five, however, it is clear that the plaintiff is challenging the appropriateness of the medical and psychiatric decisions of PHS concerning the care given to the decedent. Count Five does not assert that PHS was making wrong decisions about whether certain care would be covered by its plan, but instead challenges the decisions made by PHS with respect to the quality and appropriate level of care and treatment for the decedent. For example, Count Five alleges that PHS failed to properly diagnose and assess the decedent's psychiatric condition, failed to properly monitor, care and treat him, failed to properly oversee his treatment, and failed to prescribe and administer appropriate medication. Such claims do not fall within the scope of ERISA § 502(a).

This determination is consistent with the reasoning of *Dukes v. U.S. Healthcare*, 57 F.3d 350 (3d Cir.1995) and *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995). In *Dukes*, the Third Circuit was presented with the consolidated appeals of two district court decisions which denied the plaintiffs' motions to remand and granted the defendants' motions to dismiss. The district courts had held that they lacked removal jurisdiction over the plaintiffs' complaints because they did not fall within the scope of ERISA § 502(a). In reversing the district court decisions, the Third Circuit stated:

Nothing in the complaints indicates that the plaintiffs are complaining about their ERISA welfare plans' failure to provide benefits due under the plan. Dukes does not allege, for example, that the Germantown Hospital refused to perform blood studies on Darryl because the ERISA plan

refused to pay for those studies. Similarly, the Viscontis do not contend that Serena's death was due to their welfare plan's refusal to pay for or otherwise provide for medical services. Instead of claiming that the welfare plans in any way withheld some quantum of plan benefits due, the plaintiffs in both cases complain about the low quality of the medical treatment that they actually received and argue that the U.S. Healthcare HMO should be held liable under agency and negligence principles.

*Dukes,* 57 F.3d at 356–57.

 The claims against PHS in this case are similar to the claims against the defendants in *Dukes.* The plaintiff here, like the plaintiffs in *Dukes,* challenges the quality of the medical treatment the decedent allegedly received from PHS and its agents Danbury Hospital and Vitam.[7] Consistent with the holding in *Dukes,* this court finds that a claim about the quality of a benefit received is not a claim under ERISA § 502(a) to recover benefits due under the terms of a plan. *Id.* at 357.

This determination is supported by the text of ERISA § 502(a), which does not provide for the civil enforcement of claims related to the quality of benefits received. As the Third Circuit stated, "the legislative history, structure, or purpose of ERISA [do not] suggest that Congress viewed § 502(a)(1)(B) as creating a remedy for a participant injured by medical malpractice." *Dukes,* 57 F.3d at 357. Indeed,

> nothing in the legislative history suggest[s] that § 502 was intended as a part of a federal scheme to control the quality of the benefits received by plan participants. Quality control of benefits, such as health care benefits provided here, is a field traditionally occupied by state regulation and we interpret the silence of Congress as reflecting an intent that it remain as such.

*Id.* Cf. *Prihoda v. Shpritz,* 914 F.Supp. 113, 118 (D.Md.1996) ("Defendants have failed to demonstrate how, as a practical matter, the divergent state malpractice and vicarious liability laws, if applied to them, would interfere

with the nationwide administration of ERISA plans.").

In *Rice, supra,* the Seventh Circuit reversed the district court decision to dismiss the plaintiff's claims against his plan administrator and instructed the district court to remand the case to state court because the claims did not raise a federal question under ERISA. The *Rice* court determined that the plaintiff's complaint had been improperly removed since the claims were not completely preempted under ERISA § 502(a). Similar to the plaintiff's claims in *Dukes* and the plaintiff's claims here against PHS, the plaintiff in *Rice* sued the plan administrator for the medical malpractice of a plan doctor under the state common law theory of respondeat superior and did not allege that the plan administrator had denied the plaintiff benefits due under an ERISA plan. Such a claim was found to be the type that " '[b]eyond the simple need to refer to the ... [Plan], the ... [Plan] is irrelevant to the dispute....' " *Rice,* 65 F.3d at 645 (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 125, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).

Remanding the instant action to the state court is also consistent with the Second Circuit decision in *Lupo v. Human Affairs Int'l* 28 F.3d 269 (2d.Cir.1994). In *Lupo,* the plaintiff alleged professional malpractice and related state law claims against an ERISA plan provider for the misconduct of one of its employees, a psychotherapist who had treated the plaintiff. The district court had dismissed the plaintiff's claims on the basis that they were preempted by ERISA. The Second Circuit reversed and ordered the case remanded to the state court and stated that the district court did not have jurisdiction over the plaintiff's claims because "none of these claims bears any resemblance to those described in [ERISA § 502(a) ]." *Lupo,* 28 F.3d at 272.

To allow removal of the plaintiff's claims in this case would also undermine the purposes of the well-pleaded complaint rule. While a court "[must] not allow [a plaintiff] to avoid § 502(a)'s complete preemption exception by

---

**7.** Whether the plaintiff can *succeed* on his claim that PHS is liable to the plaintiff's decedent for medical malpractice, either directly or through a state law agency theory, is a separate issue.

casting a claim that is clearly within the boundaries of § 502(a) as a state law action ... [the court] [can]not oblige [the plaintiff] to further delineate those boundaries by recasting his complaint sua sponte as one that rests on the federal common law of ERISA." *Rice,* 65 F.3d at 646 (citing *Caterpillar v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 ("The paramount policies embodied in the well-pleaded complaint rule [are] that the plaintiff is the master of the complaint ... and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.")).

Thus, while Congress intended federal courts to develop a common law of rights and obligations under the plan, the well-pleaded complaint rule prevents [this court] from forcing [the plaintiff] from participating in that process. This court, like a defendant, cannot recharacterize a plaintiff's claim in order to create federal question jurisdiction, for if [it] did so, then the plaintiff would be the master of nothing and the well-pleaded complaint rule would be undermined.

*Rice,* 65 F.3d at 646 (citation omitted).

The court notes that PHS, in its objection to the motion to remand, characterizes itself as merely an "administrator of plan benefits" for the group health plan of plaintiff's employer and not an entity involved in the quality of care that was given the decedent. (Defendant PHS's Objection to Motions to Remand, p. 2, 8). However, Count Five of the amended complaint alleges that PHS made wrongful quality of care and treatment decisions and was itself negligent. The status of PHS as a plan administrator, rather than a health maintenance organization or care provider does not, by itself, shield PHS from state law or cause ERISA § 502(a) preemption. *See e.g., Rice,* 65 F.3d at 645.

The court also recognizes that it is often difficult to determine when an entity such as PHS is arranging, supervising, or providing the medical treatment of a plan participant—

which would be outside the scope of ERISA § 502(a)—or merely making benefit determinations—which would be within the scope of ERISA § 502(a). *See Dukes,* 57 F.3d at 360; *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). This determination is especially difficult at this stage of the proceedings when the record is so limited. The court, however, guided by the well-pleaded complaint rule, must allow the plaintiff to make his case in the manner and forum of his choice if it is not preempted by federal law. Here, the amended complaint challenges the medical care decisions of PHS. It will be the plaintiff's burden to show that PHS crossed the line into making such treatment decisions, but he may attempt to do so under state law in state court because PHS has not met its burden of establishing removal jurisdiction. *See Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir.1992).

The court concludes that the plaintiff's allegations against PHS assert claims for medical malpractice which do not fall within the scope of ERISA § 502(a). The complaint, therefore, is remanded to the Connecticut Superior Court.

### 4. ERISA § 514(a)

 Finally, the difference between complete preemption under ERISA § 502(a) and conflict preemption under ERISA § 514(a) is important to note.[8] Complete preemption under ERISA § 502(a) is an exception to the well-pleaded complaint rule that has jurisdictional consequences since it recharacterizes state law claims as claims arising under federal law. *See Metropolitan Life Ins. Co.,* 481 U.S. at 64–67, 107 S.Ct.1542; *Rice,* 65 F.3d at 641. Conflict preemption under ERISA § 514(a), however, does not recharacterize claims as arising under federal law. Rather, preemption under ERISA § 514(a) serves as a defense to a state law claim. *Compare Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (examining the scope of preemption under

---

8. Section 514(a) of ERISA provides in pertinent part: "Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

ERISA § 514(a)), *with Metropolitan Life Ins. Co.,* 481 U.S. at 64, 107 S.Ct. 1542 (stating that ERISA preemption under § 514(a) "without more, does not convert [a] state claim into an action arising under federal law"), *and Franchise Tax Bd.,* 463 U.S. at 23–27, 103 S.Ct. 2841 (holding that preemption under ERISA § 514 does not permit a defendant to remove a suit brought in state court to federal court when the plaintiff's state claim does not fall within the scope of ERISA § 502). *See also Rice,* 65 F.3d at 645–46 & n. 10 (comparing the scope of ERISA § 502(a) with that of ERISA § 514(a)); *Warner v. Ford Motor Company,* 46 F.3d 531 (6th Cir.1995) (same); *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6 (2d.Cir.1992) (discussing both ERISA § 502(a) and § 514).

The court's decision to remand this case to the Connecticut Superior Court is based on an analysis of ERISA § 502(a) and the complete preemption exception to the well-pleaded complaint rule. This decision does not address ERISA § 514(a) and the defense of conflict preemption to state law claims.

### III. CONCLUSION

For the foregoing reasons the motions to remand filed by the plaintiff and the defendants Danbury Hospital and Vitam are GRANTED.

SO ORDERED.